O:\RYA\RYA18A16.xml [file 2 of 13]                    S.L.C.

| 115TH CONGRESS<br>2d Session | HOUSE OF REPRESENTATIVES | REPORT<br>115–_____ |

## AGRICULTURE IMPROVEMENT ACT OF 2018

_____.—Ordered to be printed

Mr. Conaway, from the committee of conference,
submitted the following

## CONFERENCE REPORT

[To accompany H. R. 2]

The committee of conference on the disagreeing votes of the two Houses on the amendment of the Senate to the bill (H. R. 2), to provide for the reform and continuation of agricultural and other programs of the Department of Agriculture through fiscal year 2023, and for other purposes, having met, after full and free conference, have agreed to recommend and do recommend to their respective Houses as follows:

That the House recede from its disagreement to the amendment of the Senate and agree to the same with an amendment as follows:

In lieu of the matter proposed to be inserted by the Senate amendment, insert the following:

**SECTION 1. SHORT TITLE; TABLE OF CONTENTS.**

(a) *SHORT TITLE.—This Act may be cited as the "Agriculture Improvement Act of 2018".*

(b) *TABLE OF CONTENTS.—The table of contents for this Act is as follows:*

Sec. 1. Short title; table of contents.
Sec. 2. Definition of Secretary.

*TITLE I—COMMODITIES*

*Subtitle A—Commodity Policy*

Sec. 1101. Definition of effective reference price.
Sec. 1102. Base acres.
Sec. 1103. Payment yields.
Sec. 1104. Payment acres.
Sec. 1105. Producer election.
Sec. 1106. Price loss coverage.
Sec. 1107. Agriculture risk coverage.
Sec. 1108. Repeal of transition assistance for producers of upland cotton.

**EXHIBIT**

tabbies® 2

O:\RYA\RYA18A16.xml [file 2 of 13]                    S.L.C.

7

Sec. 7105. Renewable energy committee discontinued.
Sec. 7106. Veterinary services grant program.
Sec. 7107. Grants and fellowships for food and agriculture sciences education.
Sec. 7108. Agricultural and food policy research centers.
Sec. 7109. Education grants to Alaska Native serving institutions and Native Hawaiian serving institutions.
Sec. 7110. Next generation agriculture technology challenge.
Sec. 7111. Land-grant designation.
Sec. 7112. Nutrition education program.
Sec. 7113. Continuing animal health and disease research programs.
Sec. 7114. Carryover of funds for extension at 1890 land-grant colleges, including Tuskegee University.
Sec. 7115. Extension and agricultural research at 1890 land-grant colleges, including Tuskegee University.
Sec. 7116. Reports on disbursement of funds for agricultural research and extension at 1862 and 1890 land-grant colleges, including Tuskegee University.
Sec. 7117. Scholarships for students at 1890 institutions.
Sec. 7118. Grants to upgrade agricultural and food sciences facilities at 1890 land-grant colleges, including Tuskegee University.
Sec. 7119. Grants to upgrade agriculture and food sciences facilities and equipment at insular area land-grant institutions.
Sec. 7120. New Beginning for Tribal Students.
Sec. 7121. Hispanic-serving institutions.
Sec. 7122. Binational agricultural research and development.
Sec. 7123. Partnerships to build capacity in international agricultural research, extension, and teaching.
Sec. 7124. Competitive grants for international agricultural science and education programs.
Sec. 7125. Limitation on indirect costs for agricultural research, education, and extension programs.
Sec. 7126. Research equipment grants.
Sec. 7127. University research.
Sec. 7128. Extension service.
Sec. 7129. Supplemental and alternative crops; hemp.
Sec. 7130. New Era Rural Technology program.
Sec. 7131. Capacity building grants for NLGCA Institutions.
Sec. 7132. Agriculture advanced research and development authority pilot.
Sec. 7133. Aquaculture assistance programs.
Sec. 7134. Rangeland research programs.
Sec. 7135. Special authorization for biosecurity planning and response.
Sec. 7136. Distance education and resident instruction grants program for insular area institutions of higher education.

Subtitle B—Food, Agriculture, Conservation, and Trade Act of 1990

Sec. 7201. Best utilization of biological applications.
Sec. 7202. Integrated management systems.
Sec. 7203. Sustainable agriculture technology development and transfer program.
Sec. 7204. National training program.
Sec. 7205. National strategic germplasm and cultivar collection assessment and utilization plan.
Sec. 7206. National Genetics Resources Program.
Sec. 7207. National Agricultural Weather Information System.
Sec. 7208. Agricultural genome to phenome initiative.
Sec. 7209. High-priority research and extension initiatives.
Sec. 7210. Organic agriculture research and extension initiative.
Sec. 7211. Farm business management.
Sec. 7212. Urban, indoor, and other emerging agricultural production research, education, and extension initiative.
Sec. 7213. Centers of excellence at 1890 Institutions.
Sec. 7214. Clarification of veteran eligibility for assistive technology program for farmers with disabilities.
Sec. 7215. National Rural Information Center Clearinghouse.

Subtitle C—Agricultural Research, Extension, and Education Reform Act of 1998

Sec. 7301. National food safety training, education, extension, outreach, and technical assistance program.
Sec. 7302. Integrated research, education, and extension competitive grants program.

O:\RYA\RYA18A16.xml [file 2 of 13]                     S.L.C.

8

Sec. 7303. Support for research regarding diseases of wheat, triticale, and barley caused by Fusarium graminearum or by Tilletia indica.
Sec. 7304. Grants for youth organizations.
Sec. 7305. Specialty crop research initiative.
Sec. 7306. Food Animal Residue Avoidance Database program.
Sec. 7307. Office of Pest Management Policy.
Sec. 7308. Forestry products advanced utilization research.

*Subtitle D—Food, Conservation, and Energy Act of 2008*

PART I—AGRICULTURAL SECURITY

Sec. 7401. Agricultural biosecurity communication center.
Sec. 7402. Assistance to build local capacity in agricultural biosecurity planning, preparation, and response.
Sec. 7403. Research and development of agricultural countermeasures.
Sec. 7404. Agricultural biosecurity grant program.

PART II—MISCELLANEOUS

Sec. 7411. Grazinglands research laboratory.
Sec. 7412. Farm and Ranch Stress Assistance Network.
Sec. 7413. Natural products research program.
Sec. 7414. Sun grant program.

*Subtitle E—Amendments to Other Laws*

Sec. 7501. Critical Agricultural Materials Act.
Sec. 7502. Equity in Educational Land-Grant Status Act of 1994.
Sec. 7503. Research Facilities Act.
Sec. 7504. Agriculture and Food Research Initiative.
Sec. 7505. Extension design and demonstration initiative.
Sec. 7506. Repeal of review of agricultural research service.
Sec. 7507. Biomass research and development.
Sec. 7508. Reinstatement of matching requirement for Federal funds used in extension work at the University of the District of Columbia.
Sec. 7509. Renewable Resources Extension Act of 1978.
Sec. 7510. National Aquaculture Act of 1980.
Sec. 7511. Federal agriculture research facilities.

*Subtitle F—Other Matters*

Sec. 7601. Enhanced use lease authority program.
Sec. 7602. Transfer of administrative jurisdiction over portion of Henry A. Wallace Beltsville Agricultural Research Center, Beltsville, Maryland.
Sec. 7603. Foundation for food and agriculture research.
Sec. 7604. Assistance for forestry research under the McIntire-Stennis Cooperative Forestry Act.
Sec. 7605. Legitimacy of industrial hemp research.
Sec. 7606. Collection of data relating to barley area planted and harvested.
Sec. 7607. Collection of data relating to the size and location of dairy farms.
Sec. 7608. Agriculture innovation center demonstration program.
Sec. 7609. Smith-Lever community extension program.
Sec. 7610. Mechanization and automation for specialty crops.
Sec. 7611. Experienced services program.
Sec. 7612. Simplified plan of work.
Sec. 7613. Review of land-grant time and effort reporting requirements.
Sec. 7614. Matching funds requirement.

TITLE VIII—FORESTRY

*Subtitle A—Cooperative Forestry Assistance Act of 1978*

Sec. 8101. Support for State assessments and strategies for forest resources.
Sec. 8102. State and private forest landscape-scale restoration program.

*Subtitle B—Forest and Rangeland Renewable Resources Research Act of 1978*

Sec. 8201. Repeal of recycling research.
Sec. 8202. Repeal of forestry student grant program.

*Subtitle C—Global Climate Change Prevention Act of 1990*

Sec. 8301. Repeals relating to biomass.

O:\RYA\RYA18A16.xml [file 2 of 13]                                 S.L.C.

10

Sec. 9005.  Bioenergy program for advanced biofuels.
Sec. 9006.  Biodiesel fuel education program.
Sec. 9007.  Rural Energy for America Program.
Sec. 9008.  Rural Energy Self-Sufficiency Initiative.
Sec. 9009.  Feedstock flexibility.
Sec. 9010.  Biomass Crop Assistance Program.
Sec. 9011.  Carbon utilization and biogas education program.

                    TITLE X—HORTICULTURE

Sec. 10101.  Specialty crops market news allocation.
Sec. 10102.  Local agriculture market program.
Sec. 10103.  Organic production and market data initiatives.
Sec. 10104.  Organic certification.
Sec. 10105.  National organic certification cost-share program.
Sec. 10106.  Food safety education initiatives.
Sec. 10107.  Specialty crop block grants.
Sec. 10108.  Amendments to the Plant Variety Protection Act.
Sec. 10109.  Multiple crop and pesticide use survey.
Sec. 10110.  Report on the arrival in the United States of forest pests through restric-
               tions on the importation of certain plants for planting.
Sec. 10111.  Report on plant biostimulants.
Sec. 10112.  Clarification of use of funds for technical assistance.
Sec. 10113.  Hemp production.
Sec. 10114.  Interstate commerce.
Sec. 10115.  FIFRA interagency working group.
Sec. 10116.  Study on methyl bromide use in response to an emergency event.

                    TITLE XI—CROP INSURANCE

Sec. 11101.  Definitions.
Sec. 11102.  Data collection.
Sec. 11103.  Sharing of records.
Sec. 11104.  Use of resources.
Sec. 11105.  Specialty crops.
Sec. 11106.  Insurance period.
Sec. 11107.  Cover crops.
Sec. 11108.  Underserved producers.
Sec. 11109.  Treatment of forage and grazing.
Sec. 11110.  Administrative basic fee.
Sec. 11111.  Enterprise units.
Sec. 11112.  Continued authority.
Sec. 11113.  Submission of policies and materials to board.
Sec. 11114.  Crop production on native sod.
Sec. 11115.  Use of national agricultural statistics service data to combat waste,
               fraud, and abuse.
Sec. 11116.  Submission of information to corporation.
Sec. 11117.  Continuing education for loss adjusters and agents.
Sec. 11118.  Program administration.
Sec. 11119.  Agricultural commodity.
Sec. 11120.  Maintenance of policies.
Sec. 11121.  Reimbursement of research, development, and maintenance costs.
Sec. 11122.  Research and development authority.
Sec. 11123.  Funding for research and development.
Sec. 11124.  Technical amendment to pilot programs.
Sec. 11125.  Education and risk management assistance.
Sec. 11126.  Repeal of cropland report annual updates.

                    TITLE XII—MISCELLANEOUS

                    Subtitle A—Livestock

Sec. 12101.  Animal disease prevention and management.
Sec. 12102.  Sheep production and marketing grant program.
Sec. 12103.  Feasibility study on livestock dealer statutory trust.
Sec. 12104.  Definition of livestock.
Sec. 12105.  National Aquatic Animal Health Plan.
Sec. 12106.  Veterinary training.
Sec. 12107.  Report on FSIS guidance and outreach to small meat processors.
Sec. 12108.  Regional Cattle and Carcass Grading Correlation and Training Centers.

313

"(2) a State cooperative institution.

"(e) AUTHORIZATION OF APPROPRIATIONS.—There is authorized to be appropriated to carry out this section $5,000,000 for each of fiscal years 2019 through 2023.".

### SEC. 7127. UNIVERSITY RESEARCH.

Section 1463 of the National Agricultural Research, Extension, and Teaching Policy Act of 1977 (7 U.S.C. 3311) is amended by striking "2018" each place it appears in subsections (a) and (b) and inserting "2023".

### SEC. 7128. EXTENSION SERVICE.

Section 1464 of the National Agricultural Research, Extension, and Teaching Policy Act of 1977 (7 U.S.C. 3312) is amended by striking "2018" and inserting "2023".

### SEC. 7129. SUPPLEMENTAL AND ALTERNATIVE CROPS; HEMP.

Section 1473D of the National Agricultural Research, Extension, and Teaching Policy Act of 1977 (7 U.S.C. 3319d) is amended—

    (1) in subsection (a)—

        (A) by striking "2018" and inserting "2023"; and

        (B) by striking "crops," and inserting "crops (including canola),";

    (2) in subsection (b)—

        (A) by inserting "for agronomic rotational purposes and as a habitat for honey bees and other pollinators" after "alternative crops"; and

        (B) by striking "commodities whose" and all that follows through the period at the end and inserting "commodities.";

    (3) in subsection (c)(3)(E), by inserting "(including hemp (as defined in section 297A of the Agricultural Marketing Act of 1946))" after "material"; and

    (4) in subsection (e)—

        (A) in paragraph (1), by striking "and" at the end;

        (B) in paragraph (2), by striking the period at the end and inserting "; and"; and

        (C) by adding at the end the following new paragraph:

"(3) $2,000,000 for each of fiscal years 2019 through 2023.".

### SEC. 7130. NEW ERA RURAL TECHNOLOGY PROGRAM.

Section 1473E of the National Agricultural Research, Extension, and Teaching Policy Act of 1977 (7 U.S.C. 3319e) is amended—

    (1) in subsection (b)(1)(B)—

        (A) in clause (ii), by striking "and" at the end;

        (B) in clause (iii), by striking the period at the end and inserting "; and"; and

        (C) by adding at the end the following:

"(iv) precision agriculture."; and

    (2) in subsection (d), by striking "2008 through 2012" and inserting "2019 through 2023".

### SEC. 7131. CAPACITY BUILDING GRANTS FOR NLGCA INSTITUTIONS.

Section 1473F(b) of the National Agricultural Research, Extension, and Teaching Policy Act of 1977 (7 U.S.C. 3319i(b)) is amended by striking "2018" and inserting "2023".

338

### SEC. 7413. NATURAL PRODUCTS RESEARCH PROGRAM.

Section 7525(e) of the Food, Conservation, and Energy Act of 2008 (7 U.S.C. 5937(e)) is amended by striking "2018" and inserting "2023".

### SEC. 7414. SUN GRANT PROGRAM.

Section 7526(g) of the Food, Conservation, and Energy Act of 2008 (7 U.S.C. 8114(g)) is amended by striking "2018" and inserting "2023".

## Subtitle E—Amendments to Other Laws

### SEC. 7501. CRITICAL AGRICULTURAL MATERIALS ACT.

(a) HEMP RESEARCH.—Section 5(b)(9) of the Critical Agricultural Materials Act (7 U.S.C. 178c(b)(9)) is amended by inserting ", and including hemp (as defined in section 297A of the Agricultural Marketing Act of 1946)" after "hydrocarbon-containing plants".

(b) AUTHORIZATION OF APPROPRIATIONS.—Section 16(a)(2) of the Critical Agricultural Materials Act (7 U.S.C. 178n(a)(2)) is amended by striking "2018" and inserting "2023".

### SEC. 7502. EQUITY IN EDUCATIONAL LAND-GRANT STATUS ACT OF 1994.

(a) 1994 INSTITUTION DEFINED.—

(1) IN GENERAL.—Section 532 of the Equity in Educational Land-Grant Status Act of 1994 (7 U.S.C. 301 note; Public Law 103–382) is amended to read as follows:

**"SEC. 532. DEFINITION OF 1994 INSTITUTION.**

"In this part, the term '1994 Institution' means any of the following colleges:

"(1) Aaniiih Nakoda College.
"(2) Bay Mills Community College.
"(3) Blackfeet Community College.
"(4) Cankdeska Cikana Community College.
"(5) Chief Dull Knife College.
"(6) College of Menominee Nation.
"(7) College of the Muscogee Nation.
"(8) D–Q University.
"(9) Dine College.
"(10) Fond du Lac Tribal and Community College.
"(11) Fort Peck Community College.
"(12) Haskell Indian Nations University.
"(13) Ilisagvik College.
"(14) Institute of American Indian and Alaska Native Culture and Arts Development.
"(15) Keweenaw Bay Ojibwa Community College.
"(16) Lac Courte Oreilles Ojibwa Community College.
"(17) Leech Lake Tribal College.
"(18) Little Big Horn College.
"(19) Little Priest Tribal College.
"(20) Navajo Technical University.
"(21) Nebraska Indian Community College.
"(22) Northwest Indian College.
"(23) Nueta Hidatsa Sahnish College.
"(24) Oglala Lakota College.

### SEC. 7604. ASSISTANCE FOR FORESTRY RESEARCH UNDER THE MCINTIRE-STENNIS COOPERATIVE FORESTRY ACT.

Section 2 of Public Law 87–788 (commonly known as the "McIntire-Stennis Cooperative Forestry Act") (16 U.S.C. 582a–1) is amended in the second sentence—

(1) by striking "and" before "1890 Institutions"; and

(2) by inserting "and 1994 Institutions (as defined in section 532 of the Equity in Educational Land-Grant Status Act of 1994 (7 U.S.C. 301 note; Public Law 103–382)) that offer an associate's degree or a baccalaureate degree in forestry," before "and (b)".

### SEC. 7605. LEGITIMACY OF INDUSTRIAL HEMP RESEARCH.

(a) IN GENERAL.—Section 7606 of the Agricultural Act of 2014 (7 U.S.C. 5940) is amended—

(1) by redesignating subsections (a) and (b) as subsections (b) and (a), respectively, and moving the subsections so as to appear in alphabetical order;

(2) in subsection (a) (as so redesignated)—

(A) by redesignating paragraph (3) as paragraph (4); and

(B) by inserting after paragraph (2) the following:

"(3) STATE.—The term 'State' has the meaning given such term in section 297A of the Agricultural Marketing Act of 1946.";

(3) in subsection (b) (as so redesignated), in the subsection heading, by striking "IN GENERAL" and inserting "INDUSTRIAL HEMP RESEARCH"; and

(4) by adding at the end the following:

"(c) STUDY AND REPORT.—

"(1) IN GENERAL.—The Secretary shall conduct a study of agricultural pilot programs—

"(A) to determine the economic viability of the domestic production and sale of industrial hemp; and

"(B) that shall include a review of—

"(i) each agricultural pilot program; and

"(ii) any other agricultural or academic research relating to industrial hemp.

"(2) REPORT.—Not later than 12 months after the date of enactment of this subsection, the Secretary shall submit to Congress a report describing the results of the study conducted under paragraph (1).".

(b) REPEAL.—Effective on the date that is 1 year after the date on which the Secretary establishes a plan under section 297C of the Agricultural Marketing Act of 1946, section 7606 of the Agricultural Act of 2014 (7 U.S.C. 5940) is repealed.

### SEC. 7606. COLLECTION OF DATA RELATING TO BARLEY AREA PLANTED AND HARVESTED.

For all acreage reports published after the date of enactment of this Act, the Secretary, acting through the Administrator of the National Agricultural Statistics Service, shall include the State of New York in the States surveyed to produce the table entitled "Barley Area Planted and Harvested" in those reports.

**SEC. 10113. HEMP PRODUCTION.**

The Agricultural Marketing Act of 1946 (7 U.S.C. 1621 et seq.) is amended by adding at the end the following:

## "Subtitle G—Hemp Production

"**SEC. 297A. DEFINITIONS.**

"In this subtitle:

"(1) HEMP.—The term 'hemp' means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis.

"(2) INDIAN TRIBE.—The term 'Indian tribe' has the meaning given the term in section 4 of the Indian Self-Determination and Education Assistance Act (25 U.S.C. 5304).

"(3) SECRETARY.—The term 'Secretary' means the Secretary of Agriculture.

"(4) STATE.—The term 'State' means—

"(A) a State;

"(B) the District of Columbia;

"(C) the Commonwealth of Puerto Rico; and

"(D) any other territory or possession of the United States.

"(5) STATE DEPARTMENT OF AGRICULTURE.—The term 'State department of agriculture' means the agency, commission, or department of a State government responsible for agriculture in the State.

"(6) TRIBAL GOVERNMENT.—The term 'Tribal government' means the governing body of an Indian tribe.

"**SEC. 297B. STATE AND TRIBAL PLANS.**

"(a) SUBMISSION.—

"(1) IN GENERAL.—A State or Indian tribe desiring to have primary regulatory authority over the production of hemp in the State or territory of the Indian tribe shall submit to the Secretary, through the State department of agriculture (in consultation with the Governor and chief law enforcement officer of the State) or the Tribal government, as applicable, a plan under which the State or Indian tribe monitors and regulates that production as described in paragraph (2).

"(2) CONTENTS.—A State or Tribal plan referred to in paragraph (1)—

"(A) shall only be required to include—

"(i) a practice to maintain relevant information regarding land on which hemp is produced in the State or territory of the Indian tribe, including a legal description of the land, for a period of not less than 3 calendar years;

"(ii) a procedure for testing, using post-decarboxylation or other similarly reliable methods, delta-9 tetrahydrocannabinol concentration levels of hemp produced in the State or territory of the Indian tribe;

O:\RYA\RYA18A12.xml [file 11 of 13]   S.L.C.

430

"(iii) a procedure for the effective disposal of—
"(I) plants, whether growing or not, that are produced in violation of this subtitle; and
"(II) products derived from those plants;
"(iv) a procedure to comply with the enforcement procedures under subsection (e);
"(v) a procedure for conducting annual inspections of, at a minimum, a random sample of hemp producers to verify that hemp is not produced in violation of this subtitle;
"(vi) a procedure for submitting the information described in section 297C(d)(2), as applicable, to the Secretary not more than 30 days after the date on which the information is received; and
"(vii) a certification that the State or Indian tribe has the resources and personnel to carry out the practices and procedures described in clauses (i) through (vi); and
"(B) may include any other practice or procedure established by a State or Indian tribe, as applicable, to the extent that the practice or procedure is consistent with this subtitle.
"(3) RELATION TO STATE AND TRIBAL LAW.—
"(A) NO PREEMPTION.—Nothing in this subsection preempts or limits any law of a State or Indian tribe that—
"(i) regulates the production of hemp; and
"(ii) is more stringent than this subtitle.
"(B) REFERENCES IN PLANS.—A State or Tribal plan referred to in paragraph (1) may include a reference to a law of the State or Indian tribe regulating the production of hemp, to the extent that law is consistent with this subtitle.
"(b) APPROVAL.—
"(1) IN GENERAL.—Not later than 60 days after receipt of a State or Tribal plan under subsection (a), the Secretary shall—
"(A) approve the State or Tribal plan if the State or Tribal plan complies with subsection (a); or
"(B) disapprove the State or Tribal plan only if the State or Tribal plan does not comply with subsection (a).
"(2) AMENDED PLANS.—If the Secretary disapproves a State or Tribal plan under paragraph (1)(B), the State, through the State department of agriculture (in consultation with the Governor and chief law enforcement officer of the State) or the Tribal government, as applicable, may submit to the Secretary an amended State or Tribal plan that complies with subsection (a).
"(3) CONSULTATION.—The Secretary shall consult with the Attorney General in carrying out this subsection.
"(c) AUDIT OF STATE COMPLIANCE.—
"(1) IN GENERAL.—The Secretary may conduct an audit of the compliance of a State or Indian tribe with a State or Tribal plan approved under subsection (b).
"(2) NONCOMPLIANCE.—If the Secretary determines under an audit conducted under paragraph (1) that a State or Indian tribe is not materially in compliance with a State or Tribal plan—

431

"(A) the Secretary shall collaborate with the State or Indian tribe to develop a corrective action plan in the case of a first instance of noncompliance; and

"(B) the Secretary may revoke approval of the State or Tribal plan in the case of a second or subsequent instance of noncompliance.

"(d) TECHNICAL ASSISTANCE.—The Secretary may provide technical assistance to a State or Indian tribe in the development of a State or Tribal plan under subsection (a).

"(e) VIOLATIONS.—

"(1) IN GENERAL.—A violation of a State or Tribal plan approved under subsection (b) shall be subject to enforcement solely in accordance with this subsection.

"(2) NEGLIGENT VIOLATION.—

"(A) IN GENERAL.—A hemp producer in a State or the territory of an Indian tribe for which a State or Tribal plan is approved under subsection (b) shall be subject to subparagraph (B) of this paragraph if the State department of agriculture or Tribal government, as applicable, determines that the hemp producer has negligently violated the State or Tribal plan, including by negligently—

"(i) failing to provide a legal description of land on which the producer produces hemp;

"(ii) failing to obtain a license or other required authorization from the State department of agriculture or Tribal government, as applicable; or

"(iii) producing Cannabis sativa L. with a delta-9 tetrahydrocannabinol concentration of more than 0.3 percent on a dry weight basis.

"(B) CORRECTIVE ACTION PLAN.—A hemp producer described in subparagraph (A) shall comply with a plan established by the State department of agriculture or Tribal government, as applicable, to correct the negligent violation, including—

"(i) a reasonable date by which the hemp producer shall correct the negligent violation; and

"(ii) a requirement that the hemp producer shall periodically report to the State department of agriculture or Tribal government, as applicable, on the compliance of the hemp producer with the State or Tribal plan for a period of not less than the next 2 calendar years.

"(C) RESULT OF NEGLIGENT VIOLATION.—A hemp producer that negligently violates a State or Tribal plan under subparagraph (A) shall not as a result of that violation be subject to any criminal enforcement action by the Federal Government or any State government, Tribal government, or local government.

"(D) REPEAT VIOLATIONS.—A hemp producer that negligently violates a State or Tribal plan under subparagraph (A) 3 times in a 5-year period shall be ineligible to produce hemp for a period of 5 years beginning on the date of the third violation.

"(3) OTHER VIOLATIONS.—

"(A) IN GENERAL.—If the State department of agriculture or Tribal government in a State or the territory of an Indian tribe for which a State or Tribal plan is approved under subsection (b), as applicable, determines that a hemp producer in the State or territory has violated the State or Tribal plan with a culpable mental state greater than negligence—

"(i) the State department of agriculture or Tribal government, as applicable, shall immediately report the hemp producer to—

"(I) the Attorney General; and

"(II) the chief law enforcement officer of the State or Indian tribe, as applicable; and

"(ii) paragraph (1) of this subsection shall not apply to the violation.

"(B) FELONY.—

"(i) IN GENERAL.—Except as provided in clause (ii), any person convicted of a felony relating to a controlled substance under State or Federal law before, on, or after the date of enactment of this subtitle shall be ineligible, during the 10-year period following the date of the conviction—

"(I) to participate in the program established under this section or section 297C; and

"(II) to produce hemp under any regulations or guidelines issued under section 297D(a).

"(ii) EXCEPTION.—Clause (i) shall not apply to any person growing hemp lawfully with a license, registration, or authorization under a pilot program authorized by section 7606 of the Agricultural Act of 2014 (7 U.S.C. 5940) before the date of enactment of this subtitle.

"(C) FALSE STATEMENT.—Any person who materially falsifies any information contained in an application to participate in the program established under this section shall be ineligible to participate in that program.

"(f) EFFECT.—Nothing in this section prohibits the production of hemp in a State or the territory of an Indian tribe—

"(1) for which a State or Tribal plan is not approved under this section, if the production of hemp is in accordance with section 297C or other Federal laws (including regulations); and

"(2) if the production of hemp is not otherwise prohibited by the State or Indian tribe.

"SEC. 297C. DEPARTMENT OF AGRICULTURE.

"(a) DEPARTMENT OF AGRICULTURE PLAN.—

"(1) IN GENERAL.—In the case of a State or Indian tribe for which a State or Tribal plan is not approved under section 297B, the production of hemp in that State or the territory of that Indian tribe shall be subject to a plan established by the Secretary to monitor and regulate that production in accordance with paragraph (2).

"(2) CONTENT.—A plan established by the Secretary under paragraph (1) shall include—

"(A) a practice to maintain relevant information regarding land on which hemp is produced in the State or

O:\RYA\RYA18A12.xml [file 11 of 13]                          S.L.C.

433

territory of the Indian tribe, including a legal description of the land, for a period of not less than 3 calendar years;

"(B) a procedure for testing, using post-decarboxylation or other similarly reliable methods, delta-9 tetrahydrocannabinol concentration levels of hemp produced in the State or territory of the Indian tribe;

"(C) a procedure for the effective disposal of—

"(i) plants, whether growing or not, that are produced in violation of this subtitle; and

"(ii) products derived from those plants;

"(D) a procedure to comply with the enforcement procedures under subsection (c)(2);

"(E) a procedure for conducting annual inspections of, at a minimum, a random sample of hemp producers to verify that hemp is not produced in violation of this subtitle; and

"(F) such other practices or procedures as the Secretary considers to be appropriate, to the extent that the practice or procedure is consistent with this subtitle.

"(b) LICENSING.—The Secretary shall establish a procedure to issue licenses to hemp producers in accordance with a plan established under subsection (a).

"(c) VIOLATIONS.—

"(1) IN GENERAL.—In the case of a State or Indian tribe for which a State or Tribal plan is not approved under section 297B, it shall be unlawful to produce hemp in that State or the territory of that Indian tribe without a license issued by the Secretary under subsection (b).

"(2) NEGLIGENT AND OTHER VIOLATIONS.—A violation of a plan established under subsection (a) shall be subject to enforcement in accordance with paragraphs (2) and (3) of section 297B(e), except that the Secretary shall carry out that enforcement instead of a State department of agriculture or Tribal government.

"(3) REPORTING TO ATTORNEY GENERAL.—In the case of a State or Indian tribe covered by paragraph (1), the Secretary shall report the production of hemp without a license issued by the Secretary under subsection (b) to the Attorney General.

"(d) INFORMATION SHARING FOR LAW ENFORCEMENT.—

"(1) IN GENERAL.—The Secretary shall—

"(A) collect the information described in paragraph (2); and

"(B) make the information collected under subparagraph (A) accessible in real time to Federal, State, territorial, and local law enforcement.

"(2) CONTENT.—The information collected by the Secretary under paragraph (1) shall include—

"(A) contact information for each hemp producer in a State or the territory of an Indian tribe for which—

"(i) a State or Tribal plan is approved under section 297B(b); or

"(ii) a plan is established by the Secretary under this section;

O:\RYA\RYA18A12.xml [file 11 of 13]                    S.L.C.

434

"(B) a legal description of the land on which hemp is grown by each hemp producer described in subparagraph (A); and

"(C) for each hemp producer described in subparagraph (A)—

"(i) the status of—

"(I) a license or other required authorization from the State department of agriculture or Tribal government, as applicable; or

"(II) a license from the Secretary; and

"(ii) any changes to the status.

"SEC. 297D. REGULATIONS AND GUIDELINES; EFFECT ON OTHER LAW.

"(a) PROMULGATION OF REGULATIONS AND GUIDELINES; REPORT.—

"(1) REGULATIONS AND GUIDELINES.—

"(A) IN GENERAL.—The Secretary shall promulgate regulations and guidelines to implement this subtitle as expeditiously as practicable.

"(B) CONSULTATION WITH ATTORNEY GENERAL.—The Secretary shall consult with the Attorney General on the promulgation of regulations and guidelines under subparagraph (A).

"(2) REPORT.—The Secretary shall annually submit to the Committee on Agriculture of the House of Representatives and the Committee on Agriculture, Nutrition, and Forestry of the Senate a report containing updates on the implementation of this subtitle.

"(b) AUTHORITY.—Subject to subsection (c)(3)(B), the Secretary shall have sole authority to promulgate Federal regulations and guidelines that relate to the production of hemp, including Federal regulations and guidelines that relate to the implementation of sections 297B and 297C.

"(c) EFFECT ON OTHER LAW.—Nothing in this subtitle shall affect or modify—

"(1) the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 301 et seq.);

"(2) section 351 of the Public Health Service Act (42 U.S.C. 262); or

"(3) the authority of the Commissioner of Food and Drugs and the Secretary of Health and Human Services—

"(A) under—

"(i) the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 301 et seq.); or

"(ii) section 351 of the Public Health Service Act (42 U.S.C. 262); or

"(B) to promulgate Federal regulations and guidelines that relate to the production of hemp under the Act described in subparagraph (A)(i) or the section described in subparagraph (A)(ii).

"SEC. 297E. AUTHORIZATION OF APPROPRIATIONS.

"There are authorized to be appropriated such sums as are necessary to carry out this subtitle.".

### SEC. 10114. INTERSTATE COMMERCE.

(a) RULE OF CONSTRUCTION.—Nothing in this title or an amendment made by this title prohibits the interstate commerce of hemp (as defined in section 297A of the Agricultural Marketing Act of 1946 (as added by section 10113)) or hemp products.

(b) TRANSPORTATION OF HEMP AND HEMP PRODUCTS.—No State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 (as added by section 10113) through the State or the territory of the Indian Tribe, as applicable.

### SEC. 10115. FIFRA INTERAGENCY WORKING GROUP.

Section 3(c) of the Federal Insecticide, Fungicide, and Rodenticide Act (7 U.S.C. 13a(c)) is amended by adding at the end the following:

"(11) INTERAGENCY WORKING GROUP.—

"(A) DEFINITION OF COVERED AGENCY.—In this paragraph, the term 'covered agency' means any of the following:

"(i) The Department of Agriculture.

"(ii) The Department of Commerce.

"(iii) The Department of the Interior.

"(iv) The Council on Environmental Quality.

"(v) The Environmental Protection Agency.

"(B) ESTABLISHMENT.—The Administrator shall establish an interagency working group, to be comprised of representatives from each covered agency, to provide recommendations regarding, and to implement a strategy for improving, the consultation process required under section 7 of the Endangered Species Act of 1973 (16 U.S.C. 1536) for pesticide registration and registration review.

"(C) DUTIES.—The interagency working group established under subparagraph (B) shall—

"(i) analyze relevant Federal law (including regulations) and case law for purposes of providing an outline of the legal and regulatory framework for the consultation process referred to in that subparagraph, including—

"(I) requirements under this Act and the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq.);

"(II) Federal case law regarding the intersection of this Act and the Endangered Species Act of 1973 (16 U.S.C. 1531 et seq.); and

"(III) Federal regulations relating to the pesticide consultation process;

"(ii) provide advice regarding methods of—

"(I) defining the scope of actions of the covered agencies that are subject to the consultation requirement referred to in subparagraph (B); and

"(II) properly identifying and classifying effects of actions of the covered agencies with respect to that consultation requirement;

"(iii) identify the obligations and limitations under Federal law of each covered agency for purposes of pro-

O:\ELT\ELT18A60.xml [file 12 of 13]                    S.L.C.

439

    *(i) to determine when the use of methyl bromide is required; and*
    *(ii) to authorize such use;*
    *(B) a risk-benefit analysis of authorizing the Secretary, in accordance with appropriate requirements and criteria, such as the recommendations developed under subparagraph (E)—*
    *(i) to determine when the use of methyl bromide is required; and*
    *(ii) to authorize such use;*
    *(C) a historic estimate of situations occurring on or after September 15, 1997, that could have been deemed emergency events;*
    *(D) a detailed assessment of the adherence of the United States to international obligations of the United States with respect to the prevention of ozone depletion; and*
    *(E) an assessment and recommendations on appropriate requirements and criteria to be met to authorize the use of methyl bromide in response to an emergency event (including any recommendations for revising the definition of the term "emergency event" in subsection (a)) in a manner that fully complies with the Montreal Protocol on Substances that Deplete the Ozone Layer, including Decision IX/7 of the Ninth Meeting of the Conference of the Parties to the Montreal Protocol on Substances that Deplete the Ozone Layer.*

    *(c) REPORT.—Not later than 2 years after the date of enactment of this Act, the Secretary shall submit a report on the study under subsection (b) to the Committee on Agriculture of the House of Representatives and the Committee on Agriculture, Forestry, and Nutrition of the Senate.*

## TITLE XI—CROP INSURANCE

### SEC. 11101. DEFINITIONS.

    *Section 502(b) of the Federal Crop Insurance Act (7 U.S.C. 1502(b)) is amended—*
    *(1) by redesignating paragraphs (6), (7), (8), (9), (10), and (11) as paragraphs (7), (8), (10), (11), (12), and (13) respectively;*
    *(2) by inserting after paragraph (5) the following:*
    *"(6) COVER CROP TERMINATION.—The term 'cover crop termination' means a practice that historically and under reasonable circumstances results in the termination of the growth of a cover crop."; and*
    *(3) by inserting after paragraph (8) (as so redesignated) the following:*
    *"(9) HEMP.—The term 'hemp' has the meaning given the term in section 297A of the Agricultural Marketing Act of 1946.".*

### SEC. 11102. DATA COLLECTION.

    *Section 506(h)(2) of the Federal Crop Insurance Act (7 U.S.C. 1506(h)(2)) is amended—*
    *(1) by striking "The Corporation" and inserting the following:*

"*(ii)* WAIVER FOR HEMP.—*The Corporation may waive the viability and marketability requirement under clause (i)(I) in the case of a policy or pilot program relating to the production of hemp.*"; and

(2) in paragraph (3)(C)—

(A) in clause (ii), by striking "*and*" at the end;

(B) in clause (iii), by striking the period at the end and inserting "*; and*"; and

(C) by adding at the end the following:

"*(iv) in the case of reviewing policies and other materials relating to the production of hemp, may waive the viability and marketability requirement under subparagraph (A)(ii)(I).*".

**SEC. 11114. CROP PRODUCTION ON NATIVE SOD.**

Section 508(o)(2)(A) of the Federal Crop Insurance Act (7 U.S.C. 1508(o)(2)(A)) is amended—

(1) by striking "*During the*" and inserting the following:

"*(i) FIRST 4 CROP YEARS.—During the*";

(2) in clause (i) (as so designated), by striking "*after the date of enactment of the Agricultural Act of 2014*" and inserting "*beginning on February 8, 2014, and ending on the date of enactment of the Agriculture Improvement Act of 2018*"; and

(3) by adding at the end the following:

"*(ii) SUBSEQUENT CROP YEARS.—Native sod acreage that has been tilled for the production of an insurable crop after the date of enactment of the Agriculture Improvement Act of 2018 shall be subject to a reduction in benefits under this subtitle as described in this paragraph for not more than 4 cumulative years—*

"*(I) during the first 10 years after initial tillage; and*

"*(II) during each of which a crop on that acreage is insured under subsection (c).*".

**SEC. 11115. USE OF NATIONAL AGRICULTURAL STATISTICS SERVICE DATA TO COMBAT WASTE, FRAUD, AND ABUSE.**

Section 515 of the Federal Crop Insurance Act (7 U.S.C. 1515) is amended—

(1) in subsection (d)(1)—

(A) in subparagraph (B), by striking "*and*" at the end;

(B) in subparagraph (C), by striking the period at the end and inserting "*; and*"; and

(C) by adding at the end the following:

"*(D) using published aggregate data from the National Agricultural Statistics Service or any other data source to—*

"*(i) detect yield disparities or other data anomalies that indicate potential fraud; and*

"*(ii) target the relevant counties, crops, regions, companies, or agents associated with that potential fraud for audits and other enforcement actions.*"; and

(2) in subsection (f)(2)(A), by striking "*pursuant to*" each place it appears and inserting "*under*".

**SEC. 11116. SUBMISSION OF INFORMATION TO CORPORATION.**

Section 515(g) of the Federal Crop Insurance Act (7 U.S.C. 1515(g)) is amended—

O:\ELT\ELT18A60.xml [file 12 of 13]                S.L.C.

447

### SEC. 11118. PROGRAM ADMINISTRATION.

Section 516(b)(2)(C)(i) of the Federal Crop Insurance Act (7 U.S.C. 1516(b)(2)(C)(i)) is amended by striking "$9,000,000" and inserting "$7,000,000".

### SEC. 11119. AGRICULTURAL COMMODITY.

Section 518 of the Federal Crop Insurance Act (7 U.S.C. 1518) is amended by inserting "hemp," before "aquacultural species".

### SEC. 11120. MAINTENANCE OF POLICIES.

(a) IN GENERAL.—Section 522(b) of the Federal Crop Insurance Act (7 U.S.C. 1522(b)) is amended—

(1) in paragraph (1), by amending subparagraph (B) to read as follows:

"(B) REIMBURSEMENT.—

"(i) IN GENERAL.—An applicant who submits a policy under section 508(h) shall be eligible for the reimbursement of reasonable research and development costs if the policy is approved by the Board for sale to producers.

"(ii) REASONABLE COSTS.—For the purpose of reimbursing research and development and maintenance costs under this section, costs of the applicant shall be considered reasonable costs if the costs are based on—

"(I) for any employees or contracted personnel, wage rates equal to not more than 2 times the hourly wage rate plus benefits, as provided by the Bureau of Labor Statistics for the year in which such costs are incurred, calculated using the formula applied to an applicant by the Corporation in reviewing proposed project budgets under this section on October 1, 2016; and

"(II) other actual documented costs incurred by the applicant."; and

(2) in paragraph (4)—

(A) in subparagraph (C), by striking "approved insurance provider" and inserting "applicant"; and

(B) in subparagraph (D)—

(i) in clause (i), by striking "determined by the approved insurance provider" and inserting "determined by the applicant"; and

(ii) by adding at the end the following:

"(iii) REVIEW.—After the Board approves the amount of a fee under clause (ii), the fee shall remain in effect and not be reviewed by the Board unless—

"(I) the applicant petitions the Board for reconsideration of the fee;

"(II) a substantial change is made to the policy, as determined by the Board; or

"(III) there is substantial evidence that the fee is inhibiting sales or use of the policy, as determined by the Board.".

(b) APPLICABILITY.—

(1) IN GENERAL.—The amendments made by this section shall apply to reimbursement requests made on or after October 1, 2016.

*(2) RESUBMISSION OF DENIED REQUEST.—An applicant that was denied all or a portion of a reimbursement request under paragraph (1) of section 522(b) of the Federal Crop Insurance Act (7 U.S.C. 1522(b)) during the period between October 1, 2016, and the date of the enactment of this Act shall be given an opportunity to resubmit such request.*

**SEC. 11121. REIMBURSEMENT OF RESEARCH, DEVELOPMENT, AND MAINTENANCE COSTS.**

Section 522(b) of the Federal Crop Insurance Act (7 U.S.C. 1522(b)) is amended—

(1) in paragraph (2), by adding at the end the following:

*"(K) WAIVER FOR HEMP.—The Board may waive the viability and marketability requirements under this paragraph in the case of research and development relating to a policy to insure the production of hemp.";* and

(2) in paragraph (3)—

(A) by striking "The Corporation" and inserting the following:

*"(A) IN GENERAL.—Subject to subparagraph (B), the Corporation";* and

(B) by adding at the end the following:

*"(B) WAIVER FOR HEMP.—The Corporation may waive the marketability requirement under subparagraph (A) in the case of research and development relating to a policy to insure the production of hemp.".*

**SEC. 11122. RESEARCH AND DEVELOPMENT AUTHORITY.**

Section 522(c) of the Federal Crop Insurance Act (7 U.S.C. 1522(c)) is amended—

(1) by striking paragraphs (7) through (18) and (20) through (23);

(2) by redesignating paragraphs (19) and (24) as paragraphs (7) and (8), respectively;

(3) in paragraph (7) (as so redesignated) (entitled "Whole farm diversified risk management insurance plan"), by adding at the end the following:

*"(E) REVIEW OF MODIFICATIONS TO IMPROVE EFFECTIVENESS.—*

*"(i) IN GENERAL.—Not later than 18 months after the date of enactment of the Agriculture Improvement Act of 2018—*

*"(I) the Corporation shall hold stakeholder meetings to solicit producer and agent feedback; and*

*"(II) the Board shall—*

*"(aa) review procedures and paperwork requirements on agents and producers; and*

*"(bb) modify procedures and requirements, as appropriate, to decrease burdens and increase flexibility and effectiveness.*

*"(ii) FACTORS.—In carrying out items (aa) and (bb) of subclause (i)(II), the Board shall consider—*

*"(I) removing caps on nursery and livestock production;*

O:\RYA\RYA18A05.xml [file 13 of 13]                    S.L.C.

540

servation and management of the fish or wildlife described in subsection (c).

**SEC. 12618. DATA ON CONSERVATION PRACTICES.**

Subtitle E of title XII of the Food Security Act of 1985 (16 U.S.C. 3841 et seq.) is amended by adding at the end the following:

**"SEC. 1247. DATA ON CONSERVATION PRACTICES.**

"(a) DATA ON CONSERVATION PRACTICES.—The Secretary shall identify available data sets within the Department of Agriculture regarding the use of conservation practices and the effect of such practices on farm and ranch profitability (including such effects relating to crop yields, soil health, and other risk-related factors).

"(b) REPORT.—Not later than 1 year after the date of enactment of the Agriculture Improvement Act of 2018, the Secretary shall submit to the Committee on Agriculture of the House of Representatives and the Committee on Agriculture, Nutrition, and Forestry of the Senate a report that includes—

"(1) a summary of the data sets identified under subsection (a);

"(2) a summary of the steps the Secretary would have to take to provide access to such data sets by university researchers, including taking into account any technical, privacy, or administrative considerations;

"(3) a summary of safeguards the Secretary employs when providing access to data to university researchers;

"(4) a summary of appropriate procedures to maximize the potential for research benefits while preventing any violations of privacy or confidentiality; and

"(5) recommendations for any necessary authorizations or clarifications of Federal law to allow access to such data sets to maximize the potential for research benefits.".

**SEC. 12619. CONFORMING CHANGES TO CONTROLLED SUBSTANCES ACT.**

(a) IN GENERAL.—Section 102(16) of the Controlled Substances Act (21 U.S.C. 802(16)) is amended—

(1) by striking "(16) The" and inserting "(16)(A) Subject to subparagraph (B), the"; and

(2) by striking "Such term does not include the" and inserting the following:

"(B) The term 'marihuana' does not include—

"(i) hemp, as defined in section 297A of the Agricultural Marketing Act of 1946; or

"(ii) the".

(b) TETRAHYDROCANNABINOL.—Schedule I, as set forth in section 202(c) of the Controlled Substances Act (21 U.S.C. 812(c)), is amended in subsection (c)(17) by inserting after "Tetrahydrocannabinols" the following: ", except for tetrahydrocannabinols in hemp (as defined under section 297A of the Agricultural Marketing Act of 1946)".

And the Senate agree to the same.

Joint Explanatory Statement of the Committee of Conference

The managers on the part of the Senate and the House at the conference on the disagreeing votes of the two Houses on the amendment of the Senate to the bill, H.R. 2, to provide for the reform and continuation of agricultural and other programs of the Department of Agriculture through fiscal year 2023, and for other purposes, submit the following joint statement to the Senate and the House in explanation of the effect of the action agreed upon by the managers and recommended in the accompanying conference report:

The Senate amendment struck all of the House bill after the enacting clause and inserted a substitute text.

The House recedes from its disagreement to the amendment of the Senate with an amendment that is a substitute for the House bill and the Senate amendment.

The differences between the House bill, the Senate amendment, and the substitute agreed to in conference are noted below, except for clerical corrections, conforming changes made necessary by agreements reached by the conferees, and minor drafting and clarifying changes.

total of the Federal funds provided does not exceed the 30 percent limitation. (Section 7120)

The Senate amendment contains no comparable provision.

The Conference substitute adopts the House provision.  (Section 7125)

*(16) Supplemental and alternative crops*

The House bill amends section 1473D of NARETPA to reauthorize appropriations through fiscal year 2023 for the competitive grants program to develop supplemental and alternative crops.  It amends the program to include canola and alternative crops "for agronomic rotational purposes and for use as a habitat for honey bees and other pollinators". (Section 7124)

The Senate amendment is substantially similar to the House bill and also provides that the Secretary may award grants and enter into agreement or other arrangements to conduct research related to the development of industrial hemp as well as the development of new and emerging commercial products derived from hemp. (Section 7125)

The Conference substitute adopts the Senate provision with an amendment to increase the authorization of appropriations to $2 million for each of fiscal years 2019 through 2023.  (Section 7129)

*(17) New era rural technology program*

The Senate amendment amends section 1473E of NARETPA to reauthorize the New Era Rural Technology Program for fiscal years 2019 through 2023 and adds precision agriculture to the areas of technology development, applied research, and training supported under the program. (Section 7126)

The House bill contains no comparable provision.

The Conference substitute adopts the Senate provision.  (Section 7130)

*(18) Agriculture advanced research and development authority pilot (AGARDA)*

The Senate amendment adds a new section 1473H to NARETPA to establish the Agriculture Advanced Research and Development Authority (AGARDA) under the Office of Chief Scientist. "Advanced research and development" is defined as activities to overcome long-term and high-risk research challenges in agriculture and food through acceleration of innovative agricultural research or the development of qualified products and projects or agricultural technologies.  The Senate amendment directs the Secretary to develop a strategic plan for AGARDA and disseminate the information in the plan to those who can best contribute to the activities described in the strategic plan. It permits the Secretary to use "other transaction authority" to expedite awarding grants and entering into contracts. The provision permits the Secretary to appoint highly qualified individuals without regard to certain sections of the U.S. Code governing appointments in the competitive service and without regard to the General Schedule pay rates and authorizes establishment of the AGARDA Fund in the U.S. Treasury administered by the Chief Scientist to carry out this section. The provision permits the Secretary to accept and deposit monies received from cost recovery or contribution into the AGARDA Fund. The authority under this new section terminates on September 30, 2023. (Section 7128)

The House bill contains no comparable provision.

The Conference substitute adopts the Senate provision with amendments that (1)

Similar to the House bill, the Senate amendment expands the specialty crop research and extension initiative to include additional production practices and technologies. (Section 7305)

The Conference substitute adopts the Senate provision. (Section 7305)

The Managers recognize that the funding for research programs for specialty crops should generally be made available to all specialty crops and not include carve-outs or set-asides for any one particular specialty crop. The Managers also acknowledge the unique challenges presently facing the citrus industry in the United States with respect to HLB and the Asian Citrus Psyllid vector. In direct response to a joint request from the leadership of the citrus industry and other specialty crop stakeholders, the Managers have agreed to establish a Citrus Trust Fund to support the Emergency Citrus Disease Research and Extension Program for one additional five-year period. The Managers intend for this program to address this challenge at this particular time and do not intend for such program to continue in perpetuity.

The Managers are aware of concerns that prioritizing grants that are multi-state, multi-institutional, or multi-disciplinary disproportionately impacts the funding success of projects for certain commodities grown only in one state. The Managers encourage the Secretary to take appropriate steps to ensure that meritorious proposals are not denied solely because they lack one of the enumerated priorities.

*(35) Critical agricultural materials act*

The House bill reauthorizes appropriations for fiscal years 2019 through 2023. (Section 7501)

The Senate amendment specifies that hemp, as defined in section 297A of the Agricultural Marketing Act of 1946, is eligible for funding under the Critical Agricultural Materials Act. The Secretary shall conduct, sponsor, promote, and coordinate basic and applied research for the development of critical agricultural materials from agricultural crops having strategic and industrial importance, including for hemp. The Senate amendment also reauthorizes appropriations for fiscal years 2019 through FY 2023. (Section 7401)

The Conference substitute adopts the Senate provision.  (Section 7501)

*(36) Equity in Educational Land-Grant Status Act of 1994*

The House bill amends section 532 of the Equity in Educational Land-Grant Status Act of 1994 to add to and update the defined list of 36 tribal colleges as "1994 Institutions." The House bill reauthorizes endowment funding, capacity-building grants, and research grants for the 36 tribal colleges for fiscal years 2019 through 2023. (Section 7502)

The Senate amendment is substantially similar to the House bill with technical differences.

The Conference substitute adopts the House provision with an amendment specifying that the effective date for the updated list shall be the date of enactment. (Section 7502)

*(37) Research Facilities Act*

baccalaureate degree in forestry to be eligible for assistance for forestry research. (Section 7414)

The House bill contains no comparable provision.

The Conference substitute adopts the Senate provision. (Section 7604)

*(47) Legitimacy of industrial hemp research*

The Senate amendment amends section 7606 of the Agricultural Act of 2014 to require the Secretary to conduct a study on the hemp research pilot program that includes a review of the economic viability of the domestic production and sale of industrial hemp and hemp products, and to submit a report describing the study to Congress within 120 days. The provision also repeals the hemp research pilot programs one year after the Secretary publishes a final regulation allowing for full-scale commercial production of hemp as provided in section 297C of the Agricultural Marketing Act of 1946. (Section 7415)

The House bill contains no comparable provision.

The Conference substitute adopts the Senate provision with an amendment that requires the Secretary to submit a report describing the study not later than 12 months after the date of enactment. (Section 7605)

*(48) Collection of data relating to barley area planted and harvested*

The Senate amendment directs the National Agricultural Statistics Service to include New York in the states surveyed for the table entitled "Barley Area Planted and Harvested" in certain reports. (Section 7416)

The House bill contains no comparable provision.

The Conference substitute adopts the Senate provision. (Section 7606)

*(49) Collection of data relating to the size and location of dairy farms*

The Senate amendment requires the Administrator of the Economic Research Service (ERS) to update the report entitled "Changes in the Size and Location of US Dairy Farms" published in September 2007. As part of the update, it requires that the Secretary include an expanded Table 2 containing the full range of herd sizes detailed in Table 1. The report shall be updated no later than 120 days after the date of enactment. (Section 7417)

The House bill contains no comparable provision.

The Conference substitute adopts the Senate provision with an amendment specifying that the report shall be updated not later than 60 days after the 2017 Census of Agriculture is released. Instead of requiring an expanded Table 2, the substitute directs that the Secretary, to the maximum extent practicable, use the same reporting measurement of the full range of herd sizes in Tables 1 and 2 while protecting the confidentiality of individual producers. (Section 7607)

*(50) Agriculture innovation center demonstration program*

The House bill reauthorizes appropriations for the Agriculture Innovation Center Demonstration Program through fiscal year 2023. (Section 6502)

The Senate amendment strikes subsection (g) of section 6402 of the Farm Security and Rural Investment Act of 2002 to eliminate the requirement for the Secretary to use $300,000 to support research on the effects of projects for value-added agricultural

*(8) Hemp production*

The Senate amendment provision amends the Agricultural Marketing Act of 1946 to allow States to regulate hemp production based on a state or tribal plan. The amendment requires that such plan include information on locations of hemp production, testing for THC concentration, disposal of plants that are out of compliance, and negligence or other violations of the state or tribal plan. It requires the Secretary to establish a plan, in consultation with the U.S. Attorney General, for States and tribes without USDA approved plans to monitor and regulate hemp production. The section clarifies that nothing in this subtitle affects or modifies the Federal Food, Drug, and Cosmetic Act or authorities of the HHS Secretary and FDA Commissioner and clarifies that nothing in this title authorizes interference with the interstate commerce of hemp. (Sections 10111 & 10112)

The House bill contains no comparable provision.

The Conference substitute adopts the Senate provision with amendment, including auditing authority and a grandfather clause regarding program participation. (Sections 10113 and 10114)

In Sec. 297A, the Managers intend to clarify, within the hemp production subtitle, that hemp is defined as the plant cannabis sativa L, or any part of that plant, including seeds, derivatives, and extracts, with a delta-9 tetrahydrocannabinol (THC) concentration of not more than 0.3 percent on a dry weight basis.

In Sec. 297B, the Managers intend to authorize states and tribal governments to submit a state plan to the Secretary for approval to have primary regulatory authority over the growing and production of hemp. The Managers do not intend to limit what states and tribal governments include in their state or tribal plan, as long as it is consistent with this subtitle. For example, states and tribal governments are authorized to put more restrictive parameters on the production of hemp, but are not authorized to alter the definition of hemp or put in place policies that are less restrictive than this title.

Within 60 days of receiving a state or tribal plan, the Secretary must approve or deny the plan. The Secretary is required to consult with the Attorney General regarding the approval or denial of state plans, but the Managers intend for the final decision to be made by the Secretary. The consultation with the Attorney General should not alter the 60 day requirement to approve or deny a plan.

The Managers authorized the Secretary to audit state and tribal compliance with an approved plan and take corrective action, including revoking approval, based on a state or tribal government's noncompliance, as appropriate. The Managers intend to allow state and tribal governments to appeal decisions by the Secretary pertaining to a state or tribal plan for hemp production and do not intend to preclude a state or tribal government from resubmitting a new state or tribal plan for consideration at a later date. If a state or tribal plan is denied or revoked, the Managers intend for hemp production in that state or tribal area to fall under the Secretary's jurisdiction as authorized in section 297C.

The Secretary is authorized to provide technical assistance to states and Indian tribes to aid in the development of a state or tribal plan.

The Managers define negligent and other types of producer violations that require enforcement under a state or tribal plan. The Managers also set limits on who may participate in state or tribal plans. Any person convicted of a felony relating to a controlled substance shall be ineligible to participate under the state or tribal plan for a

10-year period following the date of the conviction. However, this prohibition shall not apply to producers who have been lawfully participating in a state hemp pilot program as authorized by the Agricultural Act of 2014, prior to enactment of this subtitle. Subsequent felony convictions after the date of enactment of this subtitle will trigger a 10-year nonparticipation period regardless of whether the producer participated in the pilot program authorized in 2014. Additionally, anyone who materially falsifies any information in their application to participate in hemp production through a state, tribal, or USDA plan shall be ineligible.

In Sec. 297C, the Managers intend to require the Secretary to develop a USDA plan or plans to be implemented in states and tribal territories that forego developing and submitting a state or tribal hemp production plan. The Managers expect the USDA plan or plans to meet the same content requirements as state and tribal plans in Sec. 297B. The USDA plan may contain, as determined by the Secretary, additional practices and procedures that are otherwise consistent with this subtitle. It is the Managers intent that the Secretary have discretion regarding the appropriate number of plans, one or more than one, needed to implement Sec. 297C.

The Managers require the Secretary to collect, maintain, and make accessible to Federal, state, territorial, and local law enforcement, real-time information regarding the status of a license or other authorization for all hemp producers, whether participating under a state, tribal, or USDA plan. The Managers encourage the Secretary to develop a memorandum of understanding with Federal law enforcement agencies to define the parameters of this system and to potentially share the costs of such information sharing system.

In Sec. 297D, the Managers clarify that the Secretary has the sole authority to issue guidelines and regulations regarding the production of hemp. However, nothing in this subtitle shall affect or modify the authority granted to the Food and Drug Administration and the Secretary of Health and Human Services under the Federal Food, Drug, and Cosmetic Act (21 U.S.C. 301 et seq.) or section 351 of the Public Health Service Act (42 U.S.C. 262), including for hemp-derived products. The Secretary is required to consult with the Attorney General on the promulgation of regulations, but ultimately, the regulations shall only be issued by the Secretary of Agriculture. To ensure that the Secretary moves forward with issuing regulations in as timely a fashion as possible, the Secretary shall periodically report to Congress with updates regarding implementation of this title.

While states and Indian tribes may limit the production and sale of hemp and hemp products within their borders, the Managers, in Sec. 10112, agreed to not allow such states and Indian tribes to limit the transportation or shipment of hemp or hemp products through the state or Indian territory.

*(9) Recognition and role of State lead agencies*

The House bill amends section 2(aa) of the Federal Insecticide, Fungicide, and Rodenticide Act ("FIFRA") to include a definition of "State lead agency" for the purposes of FIFRA.  It amends section 22(b) of FIFRA by limiting regulations to those promulgated by the EPA or within the authority of a State lead agency. The subsection further amends section 23(a)(1) of FIFRA to authorize States or Tribes to establish and maintain uniform regulation of pesticide through cooperative agreement with the Administrator of the EPA ("Administrator").  The section further amends section 24(a) of

Title XI – Crop Insurance

*(1) Definitions*
       The Senate amendment defines "cover crop termination" and "hemp" as used in the Federal Crop Insurance Act (the "Act"). (Section 11101)
       The House bill contains no comparable provision.
       The Conference substitute adopts the Senate amendment.  (Section 11101)

*(2) Data collection*
       The Senate amendment amends section 506(h)(2) of the Act to require appropriate data collected by the National Agricultural Statistics Service (NASS) and through the Noninsured Crop Disaster Assistance Program (NAP) be provided to the Federal Crop Insurance Corporation (FCIC).  The data must be provided in an aggregate form. (Section 11102)
       The House bill contains no comparable provision.
       The Conference substitute adopts the Senate amendment.  (Section 11102)
       The Managers intend that any additional information made available from the Farm Service Agency (FSA) related to NAP records, which could assist with new product development, be shared with the applicants under section 11103.

*(3) Sharing of records*
       The Senate amendment amends section 506(h)(3) of the Act to require the Secretary to share records with private developers of crop insurance products who have received payment under section 522(b)(2)(E) related to crop insurance policy research and development costs. (Section 11103)
       The House bill contains no comparable provision.
       The Conference substitute adopts the Senate amendment.  (Section 11103)
       The Managers intend that the sharing of records be limited to policies directly being developed by the applicants.

*(4) Use of resources*
       The Senate amendment amends section 507(f) of the Act to update the resources, data, boards, and the committees the Board should use within the Department, including sharing information to support the transition of crops from NAP to crop insurance. (Section 11104)
       The House bill contains no comparable provision.
       The Conference substitute adopts the Senate amendment with modifications that add board discretion and remove certain assessment requirements. (Section 11104)
       The Managers recognize that the Risk Management Agency (RMA), Natural Resources Conservation Service (NRCS) and FSA serve a significant number of common program participants. The Managers expect the agencies to coordinate to avoid duplication, streamline or create common processes, and make participants aware of opportunities even if the participants are outside that particular agency. For example, a producer may have some crops that are eligible for Federal Crop Insurance and others that are eligible for FSA's NAP. The Managers encourage USDA to establish procedures in both agencies to make sure producers are informed of all of their options for coverage without regard to which agency the producers interact with first.

*(5) Specialty crops coordinator*

The Senate amendment amends section 507(g) of the Act to require the Specialty Crops Coordinator to designate a Specialty Crop Liaison in each regional field office, and to establish a website focused on the efforts of the FCIC to provide and expand crop insurance for specialty crop producers. (Section 11105(a))

The House bill contains no comparable provision.

The Conference substitute adopts the Senate amendment with a modification to remove specific requirements for the website. (Section 11105)

The Managers intend for the website required under new section 507(g)(5) of the Act to include an online mechanism to provide comments relating to specialty crops and a calendar publishing opportunities to provide comments at specialty crop events or public forums. The Managers also encourage the Specialty Crops Coordinator to publish on the website a plan, with projected completion dates, for expanding existing policies or plans of insurance for specialty crops to new crops, new areas, and by adding new revenue options or endorsements.

*(6) Addition of specialty crops and other value-added crops*

The Senate amendment amends section 508(a)(6) of the Act to require the manager of the FCIC to annually prepare, to the maximum extent practicable, at least 2 of each of the following: (1) research and development for a policy or plan of insurance for a new crop; (2) expansion of an existing policy or plan of insurance to additional counties or states (including malting barley); and (3) research and development for a policy or plan of insurance, or endorsement, for crops with existing policies or plans of insurance, such as dollar plans. (Section 1105(b))

The House bill contains no comparable provision.

The Conference substitute adopts the Senate amendment with a technical modification replacing a description and an amendment to decrease the number of required actions from 2 of each to 1 of each. (Section 11105)

The Managers intend for this provision to be implemented in coordination with other changes that improve data sharing between FSA and RMA. The Managers intend for NAP data to be used to support expanding Federal Crop Insurance to additional crops and, for existing insurable crops, to additional counties. The Managers recognize that Federal Crop Insurance provides significantly better risk protection for producers and expect the combination of these changes with the annual review under this section to act as an "on-ramp" for producers to more robust risk management options.

*(7) Insurance period*

The Senate amendment amends section 508(a)(2) of the Act to add hemp. (Section 11106)

The House bill contains no comparable provision.

The Conference substitute adopts the Senate amendment. (Section 11106)

*(8) Cover crops*

The Senate amendment amends section 508(a)(3) of the Act to include a conservation activity or enhancement (including cover crops) that is approved by the Natural Resources Conservation Service or an agricultural expert. Requires that

The Conference substitute adopts the House provision with technical modifications to clarify the provision allows producers to purchase separate policies for each intended use, as determined by the FCIC, and any indemnity paid under those policies for each intended use shall not be considered to be for the same loss for the purposes of section 508(n) of the Act.  (Section 11109)

The Managers note there are a suite of programs administered by FSA or offered by RMA that address risks faced by livestock owners and forage producers. The Managers believe the Secretary should take into consideration the different causes of loss covered by these programs when carrying out the limitation on multiple benefits for the same loss.

*(15) Pasture, rangeland, and forage policy for members of Indian tribes*

The Senate amendment amends section 508(e)(7) of the Act to provide premium subsidy at the rate of 90 percent for a member of an Indian tribe for the first purchase of Pasture, Rangeland, and Forage insurance. (Section 11111)

The House bill contains no comparable provision.

The Conference substitute deletes the Senate amendment.

*(16) Continued authority*

The House bill amends section 508(g) to require FCIC to establish: (1) underwriting rules to provide producers with an election to limit the decrease in actual production history (APH) to not more than 10 percent of the prior crop year's APH, provided that the production decline was the result of drought, flood, natural disaster, or other insurable loss; and (2) actuarially sound premiums to cover the additional risk. (Section 10005)

The Senate amendment contains no comparable provision.

The Conference substitute adopts the House provision.  (Section 11112)

The Managers note that RMA has a long history of offering producers protection from a decrease of more than 10% in their APH. The Managers intend for RMA to continue offering this option to producers in conjunction with other APH adjustments in statute.

*(17) Submission of policies and materials to the board*

The Senate amendment amends section 508(h) of the Act to authorize the FCIC Board, in the case of a policy, pilot program, and other materials relating to the production of hemp, to waive the viability and marketability requirements under section 508(h). (Section 11112)

The House bill contains no comparable provision.

The Conference substitute adopts the Senate amendment.  (Section 11113)

*(18) Whole farm revenue agent incentives*

The Senate amendment amends section 508(k) of the Act to provide an additional reimbursement to an agent that sells a Whole Farm Revenue Policy.  (Section 11113

The House bill contains no comparable provision.

The House bill contains no comparable provision.

The Conference substitute deletes the Senate amendment.

*(25) Program administration*

The House bill reduces the amount that FCIC may use under section 516(b)(2)(C)(i) to not more than $7 million per fiscal year. (Section 11119)

The Senate amendment contains no comparable provision.

The Conference substitute adopts the House provision.  (Section 11118)

*(26) Agricultural commodity*

The Senate amendment adds hemp to the list of commodities enumerated in section 518. (Section 11120)

The House bill contains no comparable provision.

The Conference substitute adopts the Senate amendment.  (Section 11119)

The Managers expect that in determining the insurability of a crop of hemp under the Act, and in providing insurance options to hemp producers, RMA will collaborate with the appropriate USDA, state, or tribal authorities as necessary to do so consistent with the regulations and guidelines established in subtitle G of the Agricultural Marketing Act of 1946. The Managers note that USDA or the appropriate state or tribal authority, and not AIPs, agents, or loss adjusters, bear the responsibility of determining that a crop grown as hemp complies with the applicable regulations and guidelines under Subtitle G.

The Managers also intend for "aquacultural species" to include algae species as determined appropriate by the Board.

*(27) Maintenance of policies; Reimbursement of research, development, and maintenance costs*

House bill section 10007(a) amends section 522(b) of the Act to—

(1) allow for reimbursement of "reasonable and actual research and development costs" for policies that have been approved by the FCIC Board;

(2) require that costs of the applicant shall be considered "reasonable and actual costs" if the costs are based on—

(A) wage rates equal to 2 times the hourly wage rate plus benefits, as provided by the Bureau of Labor Statistics; or

(B) actual documented costs incurred by the applicant;

(3) designate the applicant (as opposed to the AIP) authority to determine whether to maintain a policy, and to establish the fee to be paid for maintenance of the policy;

(4) require the FCIC Board to approve the amount of a fee unless the Board determines, based on substantial evidence in the record, that the amount of the fee unnecessarily inhibits the use of the policy; and

(5) prohibit the FCIC Board from disapproving a user fee based on its comparison to a maintenance fee, or on the potential for the fee to result in a financial gain or loss to the applicant.

The House bill also provides that the amendments shall apply to reimbursement requests made on or after October 1, 2016, and that requests for reimbursement previously denied between October 1, 2016, and the date of enactment of this Act may be resubmitted. (Section 10007).

The Senate amendment contains no comparable provision.

The Conference substitute adopts the House provision with amendments to clarify reasonable costs apply to any employees or contracted personnel costs. The amendment also modifies the requirements for the Board to approve or disapprove the amount of a maintenance fee, by including that the fee shall remain in effect and not be reviewed by the Board unless specified criteria are met. (Section 11120)

The Managers believe the remuneration provided to the submitters of policies developed under the 508(h) process ensures that underserved commodities have a fair opportunity to benefit from innovative risk management solutions. The Managers expect RMA and the FCIC Board to work with private submitters and those maintaining the policies developed to determine fair compensation for work on these policies.

*(28) Maintenance of policies; reimbursement of research, development, and maintenance costs*

The Senate amendment amends 522(b) of the Act to waive the viability and marketability requirements for hemp under paragraphs (2) and (3). (Section 11121)

The House bill contains no comparable provision.

The Conference substitute adopts the Senate amendment. (Section 11121)

*(29) Research and development priorities and authorities*

The House bill amends paragraph (7) of the Act (as redesignated from current paragraph (19)) to define "beginning farmer or rancher" for purposes of research and development of whole farm insurance plans as having actively operated and managed a farm or ranch for less than 10 years. This is longer for these purposes than the Act's underlying definition as having actively operated and managed a farm or ranch for up to 5 years. (Section 10008)

The Senate amendment amends paragraph (7) (as redesignated from current paragraph (19)) of the Act to require FCIC, within 2 years, to hold stakeholder meetings to solicit feedback, review and modify procedures and paperwork requirements to decrease burdens, and increase flexibility and effectiveness.
(Section 11122)

The Conference substitute adopts both provisions with amendments to include additional factors the FCIC Board shall consider during review of the whole farm revenue protection policy. (Section 11122)

The Managers note the continued growth of Whole Farm Revenue Policies (WFRP). The Managers believe that this policy has the potential to provide vital risk management to producers who are underserved by crop insurance and enhance options for existing policy holders. The Managers note that WFRP has the potential to provide meaningful risk protection for non-traditional agricultural commodities (e.g. aquaculture) or production and marketing systems (e.g. urban, local food, or greenhouses), that are not served as well under current yield or revenue-based policies for individual crops.

The Managers believe that RMA should make WFRP policies more effective. In carrying out the review described in new section 522(c)(7)(E) of the Act, the Managers urge RMA to expedite the analysis of removing the cap on livestock and nursery revenue, incorporating crop insurance indemnities and NAP payments into historical revenue, and allowing all producers, regardless of total average revenue, to insure up to the maximum amount of liability. Additionally, the Managers expect RMA to solicit input from the diverse group of producers participating in WFRP and take appropriate steps to

The House bill contains no comparable provision.
The Conference substitute adopts the Senate provision. (Section 12606)

*(65) Conforming changes to controlled substances act*
The Senate amendment amends the existing exemptions to include hemp as defined in section 297A of the Agricultural Marketing Act of 1946 and tetrahydrocannabinols in hemp (as defined under section 297A of the Agricultural Marketing Act of 1946). (Section 12608)
The House bill contains no comparable provision.
The Conference substitute adopts the Senate provision. (Section 12619)

*(66) National flood insurance program reauthorization*
The Senate amendment extends financing authority of the program through January 31, 2019 and extends the program through January 31, 2019. (Section 12609)
The House bill contains no comparable provision.
The Conference substitute does not adopt the Senate provision.

*(67) Eligibility for operators on heirs property land to obtain a farm number*
The Senate amendment defines "eligible documentation" to include: (1) in states that have adopted the Uniform Partition of Heirs Property Act, a court order verifying the land meets the definition of heirs property or certification from the local recorder of deeds that the recorded landowner is deceased and not less than one heir has initiated a procedure to retitle the land; (2) a tenancy-in-common agreement that sets out ownership rights and responsibilities among all of the land owners; (3) tax returns for the preceding five years; (4) self-certification that the farm operator has control of the land; and (5) any other documentation identified by the Secretary as an alternative form of eligible documentation.
The Senate provision also requires the Secretary to provide for the assignment of a farm number to any farm operator who provides an form of eligible documentation, for purposes of demonstrating that the farm operator has control of the land for purpose of defining that land as a farm, and requires the Secretary to identify alternative forms of eligible documentation that a farm operator may provide in seeking the assignment of a farm number. (Section 12623)
The House bill contains no comparable provision.
The Conference substitute adopts the Senate provision. (Section 12615)
The Managers recognize that farm operators on land that has been passed down through multiple generations without formal probate proceedings may not have clear title to the land. The Managers intend for this section to ensure operators of such land, commonly referred to as heirs' property, who provide certain documentation to the Secretary are eligible to receive farm numbers for the purposes of accessing programs offered by the Farm Service Agency, Natural Resources Conservation Service, and Risk Management Agency. In determining States that have enacted or adopted the Uniform Partition of Heirs Property Act, the Managers intend that USDA consider "State" to mean any of the 50 States, the District of Columbia, the Commonwealth of Puerto Rico, the Virgin Islands of the United States, Guam, American Samoa, the Commonwealth of the Northern Mariana Islands, Republic of Palau, Federated States of Micronesia, and the Republic of the Marshall Islands.