IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THE CBD STORE OF FORT WAYNE, L.L.C., et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Case No.: 1:19-cv-02659-SEB-TAB ) |
| GOVERNOR ERIC HOLCOMB, et al., | ) ) |
| Defendants. | ) |

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

Plaintiffs are not entitled to a preliminary injunction in this matter. Senate Enrolled Act 516 (SEA 516) is lawful, and thus Defendants are likely to prevail on the merits. Further, public policy and the balance of equities weigh in favor of denying Plaintiffs' motion, and Plaintiffs will not be harmed by a denial.

**INTRODUCTION**

Plaintiffs seek a preliminary injunction to bar the State of Indiana from placing restrictions on smokable hemp. They cannot, however, demonstrate a likelihood of success on the merits, and do not satisfy the remaining factors necessary to justify the issuance of a preliminary injunction. Federal law expressly allows for state laws, such as SEA 516, that regulate the production of hemp more strictly than federal law.

SEA 516 provides a legislative framework for the production of hemp in Indiana. Indiana's General Assembly enacted it in response to the federal Agriculture

1

Improvement Act of 2018, Pub. L. No. 115-334 (the "2018 Farm Bill"), which amends the Agricultural Marketing Act of 1946, "to allow States to regulate hemp production based on a state or tribal plan." H.R. REP. NO. 115-__, AT 738 (2018) (Conf. Rep.)(the "Conference Report") (attached to Plaintiffs' Memorandum of Law in support of Preliminary Injunction as Exhibit 2).

The 2018 Farm Bill removed federal law prohibitions on hemp, *see* 7 U.S.C. § 1639*o* note (2018); 21 U.S.C. § 812, Sched. I(c)(17), and SEA 516 similarly authorizes "the production of, possession of, scientific study of, and commerce in hemp," Ind. Code § 15-15-13-7(a) (2019).

SEA 516 and the 2018 Farm Bill give hemp the same definition: "The term 'hemp' means the plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." *Compare* Ind. Code § 15-15-13-6 *with* 7 U.S.C. § 1639*o*(1). The 2018 Farm Bill authorizes States to submit plans for the regulation of hemp production to the Department of Agriculture, and it expressly provides that its rules regarding these state plans do not "preempt[] or limit[] any law of a State or Indian tribe that-- (i) regulates the production of hemp; and (ii) is more stringent than this subchapter." 7 U.S.C. § 1639p(a)(3)(A) (2018). SEA 516, operating within this congressionally approved area of state authority, prohibits the production and possession in Indiana of smokable hemp, Ind. Code § 35-48-4-10.1 (2019).

There is thus no conflict between SEA 516 and federal law. Plaintiffs are unlikely to succeed on the merits of their claims, and the other preliminary injunction factors weigh against granting the requested relief.

## STANDARD OF REVIEW

In determining whether a preliminary injunction should be granted, the Court weighs several factors: (1) whether the plaintiff has demonstrated at least a reasonable likelihood of prevailing on the merits; (2) whether the plaintiff has no adequate remedy at law, thus causing irreparable harm; (3) whether plaintiff's threatened injury outweighs the threatened harm the grant of the injunction will inflict on the defendant; and (4) whether granting the preliminary injunction would harm the public interest. *See, e.g.*, *HH-Indianapolis, LLC v. Consol. City of Indianapolis & Cty. of Marion*, 889 F.3d 432, 437 (7th Cir. 2018).

After considering these factors, a court should balance any irreparable harm that an injunction would cause to an opposing party, adjusting the calculus depending on the party's likelihood of success. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the U.S. of America, Inc.,* 549 F.3d 1079, 1086 (7th Cir. 2008). This harm must be real and a court may only award relief "upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008) (citing *Mazurek v. Armstrong,* 520 U.S. 968, 972 (1997)).

The "far-reaching power" of a preliminary injunction is "never to be indulged except in a case clearly demanding it." *Roland Mach. Co. v. Dresser Indus., Inc.,* 749 F.2d 380, 389 (7th Cir. 1984) (internal quotations and citation omitted).

Here, Plaintiffs raise preemption and dormant commerce clause claims, but they neither demonstrate a likelihood of success on any claim nor satisfy the remaining preliminary injunction factors.

## ARGUMENT

### I. Plaintiffs are unlikely to succeed on the merits of their claims

Plaintiffs raise three challenges to SEA 516. They contend that the 2018 Farm Bill prohibits Indiana's law under the doctrines of conflict preemption and express preemption. They further raise a Dormant Commerce Clause challenge to SEA 516. For the reasons set forth below, each of these claims will fail.

### A. SEA 516 is not expressly preempted because it does not restrict interstate transportation

Express preemption occurs "when Congress declares its intention to preempt state regulation through a direct statement in the text of federal law." *Fifth Third Bank ex rel. Trust Officer v. CSX Corp.*, 415 F.3d 741, 745 (7th Cir. 2005). Plaintiffs argue that SEA 516 is expressly preempted by the 2018 Farm Bill's provision that "No State . . . shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 (as added by section 10113) through the State. . . ." 7 U.S.C.A. § 1639*o* note (b). Plaintiffs also point out that the USDA's general counsel has noted that the 2018 Farm Bill "preempts State law *to the extent such State law prohibits the interstate transportation or shipment of hemp. . . .*" Pl.'s Br., at 9 (quoting the USDA Memorandum attached to Plaintiffs' brief as Exhibit 4).

Plaintiffs are incorrect in their interpretation of SEA 516. The 2018 Farm Bill

4

(7 U.S.C.A. § 1639*o* note (b)) does not apply to the production or possession of smokable hemp within the state, but rather only to interstate transportation of hemp and hemp products. SEA 516 restricts the production, possession, and *intra*state *delivery* of smokable hemp, but not the *inter*state *transportation* of such. Thus, SEA 516 is not expressly preempted by the 2018 Farm Bill.

### B. *Conflict preemption is inapplicable because SEA 516 does not interfere with any federal purpose or objective*

Conflict preemption "arises when state law conflicts with federal law to the extent that 'compliance with both federal and state regulations is a physical impossibility,' or the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Planned Parenthood of Indiana, Inc. v. Comm'r of Ind. State Dept. Health*, 699 F.3d 962, 984 (7th Cir. 2012) (quoting *Arizona v. United States*, 567 U.S. 387, 399 (2012)). Plaintiffs' preemption claim is of the latter "purposes and objectives" variety. *See Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1050 (7th Cir. 2013).

"Federalism, central to the constitutional design, adopts the principle that both the National and State Governments have elements of sovereignty the other is bound to respect." *Arizona v. U.S.*, 567 U.S. 387, 398 (2012) (internal citations omitted). According to the Supreme Court, the concept of federalism allows states "great latitude under their police powers to legislate as to the protection of the lives, limbs, health, comfort, and quiet of all persons." *Gonzales v. Oregon*, 546 U.S. 243, 270 (2006). To that end, courts hold a presumption against the preemption of state laws; that is, a state law must do "major damage" to clear and substantial federal interests

5

before the Supremacy Clause will demand that state law surrenders to federal regulation. *Patriotic Veterans*, 736 F.3d at 1050 (quoting *Hillman v. Maretta*, 569 U.S. 483, 490-91 (2013)).

"The traditional police power of the States is defined as the authority to provide for the public health, safety, and morals." *DeHart v. Town of Austin, Ind.*, 39 F.3d 718, 722 (7th Cir. 1994) (quoting *Barnes v. Glen Theatre, Inc.*, 501 U.S. 560, 569 (1991)). Courts "assume that the 'historic police powers of the States' are not superseded by a federal law 'unless that was the clear and manifest purpose of Congress.'" *Int'l Ass'n of Machinists District Ten and Local Lodge 873 v. Allen*, 904 F.3d 490, 509 (7th Cir. 2018) (quoting *Arizona v. United States*, 567 U.S. 387, 400 (2012)). A court will not typically undertake a "free-wheeling judicial inquiry into whether a state statute is in tension with federal objectives" because such an analysis "would undercut the principal that it is Congress rather than the courts that preempts state law." *Int'l Ass'n of Machinists*, 904 F.3d at 509.

The Conference Report for the 2018 Farm Bill explains that "states . . . are authorized to put *more* restrictive parameters on the production of hemp, but are not authorized to alter the definition of hemp or put in place policies that are less restrictive than this title." Conference Report at 738 (emphasis added). Plaintiffs argue that SEA 516's exclusion of smokable hemp from the definition of hemp—and its imposition of misdemeanor criminal penalties for dealing in smokable hemp—creates an unconstitutional conflict with federal law. Plaintiffs are mistaken. First, SEA 516 and the 2018 Farm Bill use an identical definition for hemp, and SEA 516's

6

exception of "smokable" hemp from the definition of hemp does not do "major damage" to any "clear and substantial federal interest" nor "stand as an obstacle" to any Congressional purpose or objective.

A 2018 report to Congress by the Congressional Research Service, issued several months prior to the passage of the 2018 Farm Bill, identified and focused on industrial uses for hemp, including fiber, seed, and oil. RENÉE JOHNSON, CONG. RESEARCH SERV., NO. RL32725, HEMP AS AN AGRICULTURAL COMMODITY (2018) (attached as Exhibit A). Smokable hemp was not identified as a use of hemp in the report, and SEA 516 does not impose restrictions on any of the uses of hemp outlined in the report.[1] There is simply no evidence that Congress intended to preempt states from restricting smokable hemp.

For similar reasons, SEA 516's inclusion of misdemeanor criminal penalties for dealing in smokable hemp do not impermissibly conflict with the 2018 Farm Bill. The penalties are a valid use of Indiana's police power and they do not inflict "major damage" to federal interests nor interfere with the purposes and objectives of Congress. SEA 516 does not impermissibly conflict with the 2018 Farm Bill, and therefore Plaintiffs' conflict preemption claim fails.

By permitting states to include *more* restrictive parameters on hemp

---

[1] Subsequent Congressional Research Service Reports to Congress are similarly devoid of any references to smokable hemp as a use for hemp. *See* RENÉE JOHNSON, CONG. RESEARCH SERV., NO. IF11088, 2018 FARM BILL PRIMER: HEMP CULTIVATION AND PROCESSING (2019) (attached as Exhibit B); RENÉE JOHNSON, CONG. RESEARCH SERV., NO. IF10391, HEMP-DERIVED CANNABIDIOL (CBD) AND RELATED HEMP EXTRACTS (updated 2019) (attached as Exhibit C).

Yet a fourth report references use of the hemp flower, but only for purposes of extraction of plant resin. Again, no mention is made of smokable hemp. RENÉE JOHNSON, CONG. RESEARCH SERV., NO. RR44742, DEFINING *HEMP:* A FACT SHEET (updated 2019) (attached as Exhibit D).

7

production, Congress implicitly recognized the traditional police powers of the states, and the text of the 2018 Farm Bill certainly does not manifest an intent to supersede such powers. Indeed, its express anti-preemption provision, codified at 7 U.S.C. § 1639p(a)(3)(A) (2018), demonstrates Congress's intent to *allow* States to restrict hemp production as they see fit. Indiana's restrictions on the production of smokable hemp are not preempted by the 2018 Farm Bill.

### C.  SEA 516 does not discriminate against interstate commerce and is not subject to the Commerce Clause

Modern Dormant Commerce Clause doctrine "is driven by concern about 'economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors.'" *Department of Rev. of Ky. v. Davis*, 553 U.S. 328, 337 (2008) (quoting *New Energy Co. of Ind. v. Limbach*, 486 U.S. 269, 273-74 (1988)). The "Dormant Commerce Clause doctrine only applies to laws that *discriminate* against interstate commerce, either expressly or in practical effect." *Park Pet Shop, Inc. v. City of Chicago*, 872 F.3d 495, 501 (7th Cir. 2017) (emphasis in original). Where a statute "regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits. *Pike v. Bruce Church, Inc.*, 397 U.S. 137, 142 (1970) (quoting *Huron Portland Cement Co. v. City of Detroit*, 362 U.S. 440, 443 (1960)).

The Supreme Court has defined "discrimination" as "fail[ing] to treat all persons equally when no reasonable distinction can be found between those favored

8

and those not favored." *CSX Transp., Inc. v. Alabama Dept. of Rev.*, 562 U.S. 277, 286 (2011).

SEA 516's prohibitions against the possession or delivery of smokable hemp are even-handed and apply neutrally to *any* individual found to be in violation of the statute, regardless of state residency or the origin of the smokable hemp. Further, SEA 516's restrictions on smokable hemp are clearly unrelated to economic protectionism because they do nothing to give Indiana a competitive advantage over other states. Rather, the restrictions are rooted in the state's police power to provide for the public health, safety, and morals. *See DeHart*, 39 F.3d at 722. As the Seventh Circuit has stated: "No disparate treatment, no disparate impact, no problem under the dormant commerce clause." *Park Pet Shop*, 872 F.3d at 502 (citation omitted).

Additionally, SEA 516 is not actually subject to the Commerce Clause because the 2018 Farm Bill expressly authorizes state regulation of hemp. *See* 7 U.S.C.A. § 1639p (2018); *White v. Massachusetts Council of Constr. Employers, Inc.*, 460 U.S. 204, 213 (1983) ("Where state or local government action is specifically authorized by Congress, it is not subject to the Commerce Clause even if it interferes with interstate commerce.")

Also, as is explained above, SEA 516 does not actually prohibit the interstate transportation of smokable hemp.

For these reasons, the Court should conclude that Plaintiffs are unlikely to prevail on a Dormant Commerce Clause challenge.

Because it is unlikely that Plaintiffs can succeed on the merits of any of their

9

claims, this Court should rule in favor of Defendants and deny Plaintiffs' request for a preliminary injunction.

## II. Plaintiffs are adequately protected by the law and will not suffer irreparable harm

In order to prevail on a motion for a preliminary injunction, Plaintiffs must also establish that the denial of such an injunction will result in irreparable harm. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "'Irreparable' in the injunction context means not rectifiable by the entry of a final judgment." *Walgreen Co. v. Sara Creek Prop. Co.*, 966 F.2d 273, 275 (7th Cir. 1992) (internal citations omitted). Plaintiffs claim they face irreparable harm from potential criminal sanctions if they violate SEA 516 and sell smokable hemp in Indiana, and also from lost profits due to an inability to sell smokable hemp.

First, a potential sanction for conduct not yet undertaken does not comprise "irreparable" harm. Plaintiffs do not allege that they currently face charges or penalties for having dealt in smokable hemp, and they will not face any such charges or penalties unless they violate the law on the books. As such, Plaintiffs cannot claim any irreparable harm due to potential criminal sanctions.

Second, Plaintiffs' claimed loss of profits is also not "irreparable harm." In *Turnell v. Centimark Corp.*, 796 F.3d 656, 666 (7th Cir. 2015), the plaintiff was restricted by a noncompete clause from selling certain types of roofing and could not sell to former customers. The Seventh Circuit found the plaintiff would not suffer irreparable harm because he could still sell other types of roofing and could even pursue other employment opportunities. *Id.* In Plaintiffs' case, they are still able to

sell low THC hemp extract and other legal hemp products. As with the plaintiff in *Turnell*, Plaintiffs fail to quantify any potential financial harm and the regulation of smokable hemp does not seem "likely to be crippling." *Id*.

Due to the foregoing, Plaintiffs have not demonstrated any irreparable injury.

### III. The balance of harms and public policy weigh in favor of Defendants

Permitting smokable hemp to be produced or possessed in Indiana would present significant obstacles to the ability of law enforcement to enforce Indiana's laws against marijuana. In South Carolina, where smokable hemp is legal, the State Law Enforcement Division has announced that it is abandoning training that taught officers how to identify marijuana. Instead, because it can be difficult to tell the difference between hemp and marijuana, suspected marijuana must be sent to a lab for scientific testing to determine its quantity of THC. As a result, the state anticipates a large backlog in the processing of marijuana cases. Additionally, the state has expended resources in purchasing new equipment to conduct the tests. *See* Angie Jackson, *With Hemp Legal in SC, Police Change How They Test Plant Material for Marijuana,* POST & COURIER (Feb. 23, 2019), https://www.postandcourier.com/news/with-hemp-legal-in-sc-police-change-how-they-test/article_31636e2a-264e-11e9-8100-63b46060051d.html (attached as Exhibit E).

In Florida, a state attorney issued an email noting that "[h]emp products look and smell exactly like marijuana products." He expressed concern that, due to the similarity in smell between smokable hemp and illegal marijuana, law enforcement

11

would no longer have probable cause to conduct searches based on the smell of marijuana. Further, he noted that scientific testing would have to be done on suspected marijuana before any charges could be filed. John Pacenti, *With New Hemp Law, 'Sniff and Search' Goes Up in Smoke*, PALM BEACH POST (updated July 13, 2019), https://www.palmbeachpost.com/news/20190712/with-new-hemp-law-sniff-and-search-goes-up-in-smoke (attached as Exhibit F).

The General Assembly declined to legalize the production and possession of smokable hemp in Indiana to protect the efforts of law enforcement to enforce the state's drug laws and to avoid setbacks like those experienced in other states. This is a valid exercise of Indiana's police power, represents a legitimate state interest, and outweighs Plaintiffs' interests.

## CONCLUSION

This Court should deny Plaintiffs' Motion for Preliminary Injunction. Plaintiffs are unlikely to succeed on the merits under the doctrine of preemption or the Commerce Clause. Additionally, Plaintiffs have failed to establish irreparable harm and the balance of harms and the public interests weigh in favor of Defendants.

                Respectfully submitted,

                CURTIS T. HILL, Jr.
                Attorney General of Indiana
                Atty. No. 13999-20

By:    Zachary D. Price
       Deputy Attorney General
       Atty. No. 31469-53

By:    Robert A. Rowlett
       Deputy Attorney General
       Attorney No. 35350-29

OFFICE OF THE INDIANA ATTORNEY GENERAL
302 West Washington Street, 5th Floor
Indiana Government Center South
Indianapolis, IN 46204
Telephone: (317) 232-0486
Fax: (317) 232-7979