


January 30, 2019

# 2018 Farm Bill Primer: Hemp Cultivation and Processing

The enacted 2018 farm bill (Agriculture Improvement Act of 2018, P.L. 115-334) includes a number of provisions that facilitate the commercial cultivation, processing, marketing, and sale of industrial hemp in the United States. It expands upon hemp-related provisions enacted in the 2014 farm bill (Agricultural Act of 2014, P.L. 113-79) and includes provisions that originated from congressional bills, such as the Hemp Farming Act of 2018 (S. 2667, H.R. 5485).

## Expanded Definition of Hemp

The 2018 farm bill expands the definition of *hemp*, originally established in statute as part of the 2014 farm bill (7 U.S.C. §5940(b)(2)), codified in Section 297A of the Agricultural Marketing Act of 1946 (AMA). The amended definition defines *hemp* to mean:

> the plant *"Cannabis sativa* L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis.

## Legalized Hemp Production and Sale

The 2018 farm bill amends the Controlled Substances Act (CSA, 21 U.S.C. 802(16)) to exclude *hemp* from the statutory definition of *marijuana*. For hemp to be excluded from the CSA, it must contain no more than a 0.3% concentration of delta-9 tetrahydrocannabinol (THC), which is marijuana's primary psychoactive chemical. This provision thus removes hemp—as defined in statute and subject to oversight by the U.S. Department of Agriculture (USDA)—from the CSA and from being regulated as a Schedule I drug. This provision effectively legalizes the cultivation, processing, marketing, and the sale of hemp and any cannabinoid if it is derived from hemp that is produced by a licensed grower and produced in a manner that is consistent with the 2018 farm bill, including any associated USDA regulations and applicable state regulations. All other cannabis and cannabis-derived products produced in any other setting remain a Schedule I substance under federal law and are thus subject to the CSA's strictest regulations (except for certain drug products approved by the Food and Drug Administration [FDA]).

The enacted 2018 farm bill contains an "interstate commerce" provision that prohibits states and Indian tribes from interfering with the transport of hemp or hemp products produced in accordance with the new USDA requirements through their jurisdictions.

## Created New Regulatory Framework

The 2018 farm bill creates a USDA-administered hemp program under the AMA (7 U.S.C. §1621 *et seq.*), establishing a regulatory framework to monitor compliance and regulate hemp production. It also expands eligibility to include farmers in all states, the District of Columbia, Puerto Rico, any other territory or possession of the United States, and Indian tribes. The enacted farm bill authorizes appropriations of "such sums as are necessary" to carry out the provision that establishes this regulatory framework.

The new regulatory framework for hemp cultivation would involve either a USDA-approved state or tribal government plan or a plan established by the agency. States, territories, and tribal governments wanting to have primary oversight of hemp production within their jurisdictions must submit a plan to USDA and obtain the agency's approval (AMA, §297B). Such a plan would cover, for example, information about grower location, procedures for testing, inspections, licensing, background checks, disposal of hemp that does not meet the legal definition, and enforcement of violations. USDA is required to approve or reject a submitted plan within 60 days after its receipt.

Alternatively, if the USDA rejects or revokes prior approval of a submitted state or tribal plan, hemp production in that state or tribal domain would fall under USDA's jurisdiction. In this case, such hemp activities would be subject to a plan established by USDA to monitor and regulate hemp production (AMA, §297C). Accordingly, the enacted farm bill requires USDA to develop an agency plan(s) covering requirements such as recordkeeping, testing, disposal procedures, and a licensing process and provides that USDA may require additional practices and procedures. USDA's plan(s) would be implemented in states and tribes that do not have a USDA-approved plan. Without such a license issued by USDA, it would be unlawful to produce hemp in that state or tribal domain.

USDA must collect, maintain, and make accessible to federal, state, territorial, and local law enforcement real-time information regarding the status of a license or other authorization for all hemp producers, whether participating under a state, tribal, or USDA plan. USDA is also required to report any unlicensed hemp production to the U.S. Attorney General and is required to share certain other information with law enforcement. The 2018 farm bill clarifies, however, that USDA has the sole authority to issue guidelines and regulations regarding hemp production (AMA, §297D). It further clarifies that the enacted law does not affect or modify the regulatory authority granted to FDA under the Federal Food, Drug, and Cosmetic Act (21 U.S.C. §§301 *et seq.*) or Section 351 of the Public Health Service Act (42 U.S.C. §262), including for hemp-derived products.

## Eventual Repeal of Hemp Pilot Program

The 2018 farm bill provides that the hemp pilot program established under the 2014 farm bill (P.L. 113-79, §7606)

will be repealed one year after USDA establishes its regulatory plan to oversee U.S. hemp production. The 2014 farm bill established an agricultural pilot program allowing hemp cultivation under certain conditions for research purposes only. Under the pilot program, hemp cultivation is limited to "institutions of higher education" and "state departments of agriculture" as long as it is allowed under state laws where the institution or state department of agriculture is located.

## Other Hemp-Related Provisions

Other hemp-related provisions in the 2018 farm bill would make hemp producers eligible to participate in federal crop insurance programs and make hemp production eligible for certain USDA research and development program grants. See a summary of the 2018 farm bill provisions in **text box**.

## Further Considerations for Congress

The 2018 farm bill takes major steps toward treating industrial hemp similar to any other agricultural commodity that is subject to USDA oversight and eligible to benefit from a range of USDA farm support programs. However, certain challenges and uncertainties remain.

As USDA develops the overall regulatory framework for its new hemp program, many stakeholders are closely anticipating the agency's proposed regulatory requirements, industry guidance, and next steps. Often regulatory development can take years, depending on the complexity of the issue. Among the complexities inherent in expanding the use of hemp are: How will federal and state authorities effectively differentiate between hemp (as defined in statute and now under USDA's jurisdiction) and all other types of cannabis (defined as marijuana), which continue to be subject to the CSA and the jurisdiction of the Drug Enforcement Administration? A closely related issue is how will federal and state regulatory authorities effectively enforce the statutory threshold for hemp in terms of both hemp production (at the field level) and its use in a range of hemp-derived value-added and manufactured products? Some industry advocates have indicated a desire to raise the current statutory limit of 0.3% THC to 1% THC. This could reduce the difficulty of differentiating hemp from other cannabis without resulting in a psychoactive product, such as marijuana. A bill (H.R. 3530) introduced in the 115th Congress proposed a higher hemp threshold of 0.65% THC for research purposes.

There are also questions regarding the role of FDA oversight of certain cannabis-derived therapeutic products, such as cannabidiol (CBD). For example, how will hemp-derived CBD be differentiated from other cannabis-derived CBD? And what FDA product requirements apply depending on whether a hemp-derived product is marketed as a food product, a dietary supplement, a cosmetic or body product, or a pharmaceutical drug?

Other hemp-related policy questions include: What might federal crop insurance policies regarding hemp look like, and how will these be developed given limited market information and price-discovery mechanisms? Other introduced legislation in the 115th Congress relating to hemp was not included in the 2018 farm bill. These bills included provisions that addressed certain therapeutic and medicinal uses of hemp and also banking and federal water-use restrictions related to its production.

---

### 2018 Farm Bill Provisions Addressing Hemp

- **Conforming Changes to the CSA** (§12619)—Amends the CSA (21 U.S.C. §802(16)) to exclude hemp and hemp-derived products from the statutory definition of *marijuana*.
- **Interstate Commerce** (§10114)—Prohibits a state or Indian tribe from interfering with the "transportation or shipment of hemp or hemp products" (as defined in statute and subject to USDA oversight) through the state or tribal domain.
- **Hemp Production** (§10113)—Creates a new Subtitle G under the AMA (7 U.S.C. §1621 *et seq.*), expanding the statutory definition of *hemp*, expanding eligibility to include tribes and territories, and establishing a regulatory framework to monitor compliance and regulate production.

    **AMA §297A:** Expands definition of *hemp* and establishes certain restrictions related to applicants convicted of a felony involving a controlled substance. Specifies requirements regarding the approval of state and tribal government plans and sets any corrective actions for plan violations. Allows USDA to provide technical assistance to develop plans.

    **AMA §297B:** Authorizes states and tribal governments wanting primary regulatory authority over hemp production to submit a plan to USDA for approval (covering grower location, licensing, procedures for testing, inspections, background checks, disposal, enforcement of violations, and other requirements). If a state or tribal government plan is denied or revoked, USDA is responsible for hemp oversight.

    **AMA §297C:** Requires USDA to develop an agency plan(s) to be implemented in states and tribal territories that forego submitting a plan to USDA. Requires USDA to report any unlicensed hemp production to the U.S. Attorney General and requires other information sharing to law enforcement.

    **AMA §297D:** Requires USDA to promulgate regulations and guidelines "as expeditiously as practicable." Clarifies that USDA has sole authority to issue guidelines and regulations regarding hemp production and that FDA's authority under its laws and jurisdiction is unchanged.

    **AMA §297E:** Authorizes appropriations of "such sums as are necessary" to carry out Subtitle G.

- **Legitimacy of Hemp Research** (§7605)—Requires USDA to conduct a study of agricultural pilot programs and assess the economic viability of the domestic production and sale of hemp. Repeals 2014 hemp pilot program one year after USDA establishes a plan under AMA §297C.
- **Critical Agricultural Materials Act Grant Program** (§7501)—Expands eligibility of program to include hemp.
- **Supplemental and Alternative Crops** (§7129)—Expands eligibility of program to include hemp.
- **Crop Insurance Definitions** (§11101, §11119)—Makes hemp eligible for federal crop insurance and adds hemp to the statutory definition of *agricultural commodity*.
- **Insurance Period** (§11106)—Adds hemp to the crops for which post-harvest losses may be covered by federal crop insurance, which for most crops is generally prohibited.
- **Submission of Policies/Materials to FCIC Board** (§11113, §11121)—Authorizes FCIC to waive certain viability and marketability requirements for reimbursement of research and development relating to a policy to insure hemp production.

---

**Renée Johnson**, Specialist in Agricultural Policy

EXHIBIT B

## Disclaimer

This document was prepared by the Congressional Research Service (CRS). CRS serves as nonpartisan shared staff to congressional committees and Members of Congress. It operates solely at the behest of and under the direction of Congress. Information in a CRS Report should not be relied upon for purposes other than public understanding of information that has been provided by CRS to Members of Congress in connection with CRS's institutional role. CRS Reports, as a work of the United States Government, are not subject to copyright protection in the United States. Any CRS Report may be reproduced and distributed in its entirety without permission from CRS. However, as a CRS Report may include copyrighted images or material from a third party, you may need to obtain the permission of the copyright holder if you wish to copy or otherwise use copyrighted material.