**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

THE CBD STORE OF FORT WAYNE, L.L.C., )
INDIANA CBD WELLNESS INC., )
C. Y. WHOLESALE INC., )
INDY E CIGS LLC, )
5 STAR MEDICINAL PRODUCTS, LLP, )
DREEM NUTRITION, INC. )
MIDWEST HEMP COUNCIL, INC., and )
EL ANAR, LLC, )
 ) CASE NO. 1:19-cv-2659-SEB-TAB
    Plaintiffs, )
 )
  vs. )
 )
GOVERNOR ERIC HOLCOMB, in his official )
capacity, and THE STATE OF INDIANA, )
 )
    Defendants. )

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF
MOTION FOR PRELIMINARY INJUNCTION**

   Plaintiffs, pursuant to the Court's July 15, 2019 Order, respectfully submit the following

reply brief in support of their Motion for Preliminary Injunction.

**<u>INTRODUCTION</u>**

   Beginning with the passage of the Agricultural Act of 2014, Pub. L. No. 113-79 (the

"2014 Farm Bill"), Congress has consistently demonstrated its intent to revive domestic hemp

production for American farmers.  With the passage of the Agriculture Improvement Act of

2018, Pub. L. 115-334 (the "2018 Farm Bill"), Congress substantially expanded on that vision by

moving away from an "industrial hemp" concept in the 2014 Farm Bill and instead embracing all

low-THC hemp products, derivatives, and extracts.[1] The 2018 Farm Bill defines low-THC hemp

---

[1] "Low-THC" (as it is generally referred to) has only trace amounts of psychoactive tetrahydrocannabinol (THC), the drug found in marijuana, meaning there is no "high" obtained from consuming low-THC hemp products.

to include "all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers" and forbids States from altering this definition or restricting the interstate transportation of a legal hemp product.

Despite the clear directives in the 2018 Farm Bill and its legislative history, Senate-Enrolled Act 516 ("SEA 516") excludes "smokable hemp" (which includes the derivatives hemp bud and hemp flower) from the definition of "hemp" supplied by federal law, and renders it a crime to possess or transport smokable hemp in Indiana.  Defendants claim that SEA 516 does not run afoul of federal law because states are permitted to regulate the production of hemp more stringently, but SEA 516's offending provisions have nothing to do with hemp "production."  Defendants also contend SEA 516 has no impact on interstate commerce, despite the fact that anyone who "delivers" or "possesses" smokable hemp is subject to arrest, without any distinction between intrastate or interstate transport.  By carving out smokable hemp, SEA 516 attempts to do exactly what federal law prohibits by narrowing the definition of "hemp" and restricting the ability to transport it without State interference.  SEA 516 should be preliminarily enjoined.

## ARGUMENT

### I.     Plaintiffs have demonstrated a likelihood of success that SEA 516 is unconstitutional.

Federal law preempts the smokable hemp carve out in SEA 516 because it stands in direct conflict with the 2018 Farm Bill.  In its original motion and brief, Plaintiffs demonstrated that SEA 516 violates both the Supremacy Clause and Commerce Clause by seeking to restrict the federal definition of legal hemp products and criminalizing the transport and possession of smokable hemp.  Defendants' arguments in opposition are unavailing for the reasons set forth below.

---

*See United States v. Mallory*, 372 F. Supp. 3d 377, 382 (S.D. W. Va. 2019) ("THC at 0.3 percent or less is insufficient to have a narcotic effect."

**A. SEA 516's prohibition on smokable hemp is not related to the "production" of hemp.**

Defendants' central argument against preemption is the contention that the 2018 Farm Bill expressly allows states to regulate the "production" of hemp more stringently than federal law, which Defendants call the "anti-preemption provision." 7 U.S.C. § 1639p(a)(3)(A) ("Nothing in this subsection preempts or limits any law of a State or Indian tribe that -- **(i)** regulates the production of hemp; and **(ii)** is more stringent than this subchapter."). Based on this provision, Defendants claim that federal law cannot preempt SEA 516 because the 2018 Farm Bill "demonstrates Congress's intent to *allow* States to restrict hemp production as they see fit." Opp'n Brief, p. 8 [Doc. 23] (emphasis in original).

The "anti-preemption provision" provides that States may regulate the ***production*** of hemp more stringently, which is irrelevant to this case. "Production" in an agricultural setting refers to the growing of crops or livestock. "The General Assembly defined an agricultural operation as 'any facility used for the production of crops, livestock, poultry, livestock products, poultry products, or horticultural products or for growing timber.'" *Lindsey v. DeGroot*, 898 N.E.2d 1251, 1257 (Ind. Ct. App. 2009) (quoting Ind. Code § 32–30–6–1 (2003)); *see also Adkins v. Silverman*, 899 F.3d 395, 399 (5th Cir. 2018) ("Congress recently amended the methodology used to calculate actual production history with the Agricultural Act of 2014, known as 'the 2014 Farm Bill.' Pub. L. No. 113-79, 128 Stat. 649. Farmers now have a right to 'elect to exclude' certain low-production years from being calculated into their actual production history."). Black's Law Dictionary (11th ed. 2019) defines "production" as "**1.** The act or process of making or growing things, esp. those to be sold <the production of consumer goods>. **2.** The amount of goods that are made or grown; esp., the tangible result of industrial or other labor <annual production> ...." *See also* https://www.merriam-

3

webster.com/dictionary/production (stating one definition of "production" is the "total output especially of a commodity or an industry").

General Counsel for the USDA, in a detailed memorandum discussing the 2018 Farm Bill, concluded that the anti-preemption provision is limited to hemp "production," meaning the "growing of hemp:"

> It is important for the public to recognize that the 2018 Farm Bill preserves the authority of States and Indian tribes to enact and enforce laws regulating the **production** of hemp that are more stringent than Federal law.  Thus, while a State or Indian tribe cannot block the shipment of hemp through the State or Tribal territory, it may continue to enforce State or Tribal laws prohibiting the ***growing*** of hemp in that State or Tribal territory.

*See* USDA Memorandum, ***Exhibit 4*** to the Complaint, p. 2; (first emphasis in original, second added); *see id.* at 8, n. 15 ("the anti-preemption provision is limited to the **production** of hemp ….").  Thus, for example, it would be permissible for Indiana to require farmers to use a certain type of hemp seed, to establish distances between hemp fields to avoid cross-pollination, to restrict how many acres of hemp could be grown each year by a particular farmer, or to limit the total amount of acreage in the state devoted to hemp production.  These restrictions relate to the "production" of hemp and are squarely within the anti-preemption provision of 7 U.S.C. § 1639p(a)(3)(A).

The challenged portion of SEA 516 criminalizes the manufacture, financing, delivery, or possession of smokable hemp – not the production of hemp generally.  Ind. Code § 35–48–4–10.1 states,

(a) A person who:

   (1) knowingly or intentionally:
            (A) manufactures;
            (B) finances the manufacture of;
            (C) delivers;
            (D) finances the delivery of; or

4

          (E) possesses;
           smokable hemp; or

     (2) possesses smokable hemp with intent to:
          (A) manufacture;
          (B) finance the manufacture of;
          (C) deliver; or
          (D) finance the delivery of;
          smokable hemp

commits dealing in smokable hemp, a Class A misdemeanor.

The phrase "regulates the production of hemp" in the 2018 Farm Bill means exactly what it says – States may choose to impose regulations and restrictions on farmers who are growing (i.e., producing) hemp.  Indeed, SEA 516 does contain sections that relate to the "production" of hemp, but those sections of the bill are not challenged in this suit.  The offending portions of SEA 516 that criminalize smokable hemp have nothing to do with the "production" of hemp and, thus, the anti-preemption provision in the 2018 Farm Bill provides no cover to Defendants.

**B.  SEA 516 impermissibly narrows the definition of hemp and is, therefore, invalid under the doctrine of conflict preemption.**

The Conference Report for the 2018 Farm Bill is clear: "[States] are not authorized to alter the definition of hemp …."  Conference Report for Agricultural Improvement Act of 2018, p. 738.  Such legislative history is authoritative.  *Geier v. Am. Honda Motor Co.*, 529 U.S. 861, 874 (2000) (looking to comments of the federal act in question and its legislative history to determine the purpose and intent of the act).

Recognizing the weight of the Conference Report, Defendants argue that SEA 516 does not conflict with the 2018 Farm Bill because both use the same definition of "hemp."  Opp'n Brief at 2, 6.  But that analysis is overly simplistic and misleading.  It is true that both SEA 516 and the 2018 Farm Bill define "hemp" in the same manner.  *Compare* 7 U.S.C.A. § 1639o(1) (defining hemp as "plant Cannabis sativa L. and any part of that plant, including the seeds

thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol [THC] concentration of not more than 0.3 percent on a dry weight basis") *with* Ind. Code § 15-15-13-6 (same except for ending with the phrase, "for any part of the Cannabis sativa L. plant."). But SEA 516 then goes on to expressly carve out "smokable hemp," which is defined as:

> a product containing not more than three-tenths percent (0.3%) delta-9-tetrahydrocannabinol (THC), including precursors and derivatives of THC, in a form that allows THC to be introduced into the human body by inhalation of smoke. The term includes:
> > (1) hemp bud; and
> > (2) hemp flower.

Ind. Code § 35-48-1-26.6(a). Defendants do not dispute that "hemp bud" and "hemp flower" are "derivatives" and "extracts" of hemp that are expressly ***included*** in the definition of "hemp" in the 2018 Farm Bill. 7 U.S.C.A. § 1639o(1). Thus, while using the same definition initially, SEA 516 further narrows the definition of "hemp" by prohibiting the derivatives /extracts, hemp bud and hemp flower. Defendants' contention that no conflict exists between SEA 516 and the 2018 Farm Bill because both laws use a common definition of "hemp" ignores the entire "smokable hemp" section of SEA 516.

Defendants also argue that conflict preemption does not apply because SEA 516's prohibition on smokable hemp does not violate any clear and substantial federal interest. Opp'n Brief at 7 ("There is simply no evidence that Congress intended to preempt states from restricting smokable hemp."). This too is incorrect. First, there ***is*** Congressional intent to declare hemp bud and hemp flower legal derivatives of hemp. The definition of hemp in the 2018 Farm Bill expressly includes "all derivatives, extracts …" of low-THC hemp (which includes hemp bud and hemp flower), and the Conference Report for the bill provides that States are not authorized to alter that definition. Conference Report for Agricultural Improvement Act

of 2018, p. 738.  The best indication of Congressional intent is the language of the statute:

"When interpreting congressional statutes, we first look at the plain language of the statute

because that is the best way to determine congressional intent."  *O'Kane v. Apfel*, 224 F.3d 686,

688 (7th Cir. 2000).  Here, the Court need not look any further than the text of the 2018 Farm

Bill for evidence of Congressional intent to include hemp bud and hemp flower, as well as all

other hemp derivatives.

Second, there is ample evidence that the federal government feels strongly about

legalizing low-THC hemp and its derivatives.  The 2014 Farm Bill legalized "industrial hemp"

and permitted farmers to grow hemp under certain conditions.  In December 2015, Congress

included language in Section 763 of the Consolidated Appropriations Act of 2016, an omnibus

spending bill, stating that no federal money could be spent "to prohibit the transportation,

processing, sale, or use of industrial hemp that is grown or cultivated in accordance with [the

2014 Farm Bill]."  *See Exhibit 6* (excerpt attached because entire bill is 888 pages).[2]  This same

language was repeated in the 2017 spending bill, and slightly expanded language was used in the

2018 spending bill.  *See Mallory*, 372 F. Supp. 3d at 382.  Then, in 2018, Congress passed the

2018 Farm Bill, which expanded the definition of hemp and removed the qualifier "industrial"

when referring to hemp.  In the 2018 Farm Bill Congress evinced its intent to treat hemp like any

other regulated agricultural commodity by removing low-THC hemp from a list of controlled

substances, permitting farmers to obtain crop insurance for hemp, and protecting and boosting

hemp research, among other things.

Statements from some of the sponsors of the 2018 Farm Bill reinforce Congressional

intent to normalize all hemp products and encourage its production by farmers.  Senator Mitch

---

[2] Exhibits 1 – 5 were attached to the Complaint for Declaratory and Injunctive Relief [Doc. 1].

McConnell, one of the authors of the 2014 Farm Bill and 2018 Farm Bill, tweeted on April 12, 2018:

> It's time the federal gov changes the way it looks at #hemp, which is why Senator @RonWyden and I, along with @SenJeffMerkley, are introducing legislation that will modernize federal law in this area & empower American farmers to explore this promising new market.

https://twitter.com/SenateMajLdr/status/984442796798087170.  Senator Wyden, who also authored the 2018 Farm Bill, concurred in a press release dated December 11, 2018:

> "For too long, the outrageous and outdated ban on growing hemp has hamstrung farmers in Oregon and across the country," Wyden said. "Hemp products are made in America, sold in America, and consumed in America. Now, hemp will be able to be legally grown in America, to the economic benefit of consumers and farmers in Oregon and nationwide."

*Exhibit 7* (also available at https://www.wyden.senate.gov/news/press-releases/wyden-statement-on-hemp-legalization) (emphasis in original).

The federal government's intent in the 2018 Farm Bill was to legalize and de-stigmatize low-THC hemp (including all derivatives) so that farmers could utilize it as a crop.  Indiana's attempt in SEA 516 to nevertheless criminalize the manufacture, financing, delivery, or possession of hemp derivatives that the federal government legalized unquestionably contradicts this federal intent.  There *is* a substantial federal interest in legalizing all low-THC hemp products and derivatives, and Defendants' restriction on that federal interest violates both the plain language of the 2018 Farm Bill and statements demonstrating Congressional intent.  The portions of SEA 516 relating to smokable hemp are preempted by federal law.

### C.  SEA 516 violates federal law by precluding the transportation of smokable hemp.

The parties agree that the 2018 Farm Bill contains a provision that expressly preempts a State from prohibiting the transportation of hemp or hemp products:

SEC. 10114. INTERSTATE COMMERCE.

(a) Rule of Construction. Nothing in this title or an amendment made by this title prohibits the interstate commerce of hemp (as defined in section 297A of the Agricultural Marketing Act of 1946 (as added by section 10113)) or hemp products.

(b) Transportation of Hemp and Hemp Products. ***No State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products*** produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 (as added by section 10113) through the State or the territory of the Indian Tribe, as applicable.

(Emphasis added).  SEA 516 makes it a criminal offense to manufacture, finance, deliver, or possess smokable hemp. Ind. Code § 35–48–4–10.1.  Despite the broad language of SEA 516, Defendants argue there is no conflict with the 2018 Farm Bill because the federal bill only applies to the interstate transportation of hemp, while SEA 516 only applies to intrastate delivery or possession of smokable hemp.  Opp'n Brief at 4-5.  Not true.

Put simply, there is nothing in the text of SEA 516 that limits it solely to intrastate commerce.  Indeed, SEA 516 on its face states that anyone who "delivers," "finances the delivery of," or "possesses" smokable hemp has committed the crime of dealing in smokable hemp.  Ind. Code § 35–48–4–10.1.  Thus, a driver traveling along I-74 from Ohio to Illinois with smokable hemp in the vehicle, including hemp bud or hemp flower, would be in "possession" of smokable hemp and subject to arrest.  This, despite the fact that hemp bud and hemp flower are "hemp-derived products" that are expressly permitted to be transported freely: "The 2018 Farm Bill expressly allows hemp, its seeds, and hemp-derived products to be transported across State lines."  *Mallory*, 372 F. Supp. 3d at 385; *see also* USDA Memorandum, ***Exhibit 4*** to the Complaint, p. 2 (stating "a State or Indian tribe cannot block the shipment of hemp through the State or Tribal territory").

Defendants' argument that SEA 516 is limited solely to intrastate commerce and does not impact interstate transportation of smokable hemp simply cannot be reconciled with the sweeping language that criminalizes all possession of smokable hemp.  The 2018 Farm Bill expressly preempts Indiana's prohibition on the transportation of smokable hemp in SEA 516.[3]

### D. Criminalizing all possession and delivery of smokable hemp impedes the transport of a product declared legal by the federal government in violation of the Commerce Clause.

The criminal sanctions imposed in SEA 516 on anyone who "possesses" or "delivers" smokable hemp impermissibly restricts interstate commerce.  Defendants raise three arguments in support of its contention that SEA 516 does not violate the Commerce Clause.

First, Defendants aver that there can be no violation of the Commerce Clause unless a state law discriminates against interstate commerce such that the state has engaged in economic protectionism.  Opp'n Brief at 8-9.  While discrimination against other states' goods is a common way to violate the Commerce Clause, it is not the only way recognized in federal jurisprudence.  Imposing a substantial burden on interstate commerce is another.

> That the ordinance does not discriminate against interstate commerce does not, however, end the Commerce Clause inquiry.  Even a nondiscriminatory regulation may nonetheless impose an excessive burden on interstate trade when considered in relation to the local benefits conferred. See *Brown–Forman Distillers,* 476 U.S., at 579, 106 S.Ct., at 2084. Indeed, we have long recognized that "a burden imposed by a State upon interstate commerce is not to be sustained simply because the statute imposing it applies alike to ... the people of the State enacting such statute."

*C & A Carbone, Inc. v. Town of Clarkstown, N.Y.*, 511 U.S. 383, 405, 114 S. Ct. 1677, 1689, 128 L. Ed. 2d 399 (1994).

---

[3] Defendants' artificial distinction between interstate and intrastate transportation of smokable hemp is also unworkable in practice.  Would a police officer who has stopped a vehicle have to determine whether the driver intends to just transport the hemp through Indiana or if the driver intended to deliver the hemp here?  And proving one or the other would be nearly impossible in most cases.  But, regardless, SEA 516 provides no distinction between interstate and intrastate transport because it criminalizes *all* possession of smokable hemp.

In *Kassel v. Consol. Freightways Corp. of Delaware*, Iowa had adopted a law precluding trucks pulling 65-foot doubles on its highways.  450 U.S. 662, 665, 101 S. Ct. 1309, 1313, 67 L. Ed. 2d 580 (1981).  A trucking company filed suit challenging the law as a violation of the Commerce Clause due to the substantial burden, and additional cost, imposed on trucking companies.  *Id.*  While reviewing Commerce Clause jurisprudence, the Supreme Court stated:

> The Clause requires that some aspects of trade generally must remain free from interference by the States. When a State ventures excessively into the regulation of these aspects of commerce, it "trespasses upon national interests," *Great A & P Tea Co. v. Cottrell*, 424 U.S. 366, 373, 96 S.Ct. 923, 928, 47 L.Ed.2d 55 (1976), and the courts will hold the state regulation invalid under the Clause alone.

*Id.* at 450 U.S. at 669, 101 S. Ct. at 1315.  The Court struck down the law as a violation of the Commerce Clause because it "substantially burdens the interstate flow of goods by truck."  *Id.* at 450 U.S. at 671, 101 S. Ct. at 1316.

Federal district courts have reached similar conclusions.  *See, e.g., Funtana Vill., Inc. v. City of Panama City Beach*, No. 5:15CV282-MW/GRJ, 2016 WL 7638470, at *3 (N.D. Fla. Jan. 19, 2016) ("[A] nondiscriminatory law may still violate the Dormant Commerce Clause if it imposes an excessive burden on interstate commerce."); *De Jesus v. Am. Airlines, Inc.*, 532 F. Supp. 2d 345, 351 (D.P.R. 2007) (holding that regulations on airline advertising was a violation of the Commerce Clause and was preempted without relying upon economic protectionism or discrimination).  Holding state or local laws invalid that unduly intrude on interstate commerce has been the law for nearly two centuries:

> Since *Gibbons v. Ogden*, 22 U.S. 1, 9 Wheat 1, 6 L.Ed. 23 (1824), the Supreme Court has consistently held invalid state and local laws which substantially impede the free flow of interstate commerce under the commerce clause. …  The nation's interest in the free flow of commerce must remain paramount; it must not be burdened by parochial local legislation which seeks to halt commerce and thereby unilaterally redefine a city [or State] as an independent economic unit, separate and apart from federal polity.

*Pittston Warehouse Corp. v. City of Rochester*, 528 F. Supp. 653, 660 (W.D.N.Y. 1981).

The hemp industry is already substantial, and it is growing rapidly.  The entire hemp CBD industry is expected to exceed $20 billion by 2022.  *See **Exhibit 8***.  The smokable hemp market alone is projected to grow to $70.6 million in 2019 according to the Brightfield Group, a research and consulting firm who analyzes hemp markets.  *See **Exhibit 9.***  Indiana – the "crossroads of America" – is not permitted to stem the flow of interstate commerce involving hemp derivatives like hemp bud and hemp flower by criminalizing possession.  Like in *Kassel*, those transporting hemp bud or hemp flower, or any other "smokable hemp," would have to route around Indiana due to the risk of arrest by transporting the products through the state.  450 U.S. at 671.  Such a burden on interstate commerce of a good declared legal by the federal government violates the Commerce Clause.  *Id.*

Second, Defendants argue that the 2018 Farm Bill "expressly authorizes state regulation of hemp."  Opp'n Brief at 9 (citing 7 U.S.C.A. § 1639p).  Actually, the 2018 Farm Bill only authorizes States to regulate the "production" of hemp, a point addressed in Section I.A. above.  Indiana has the authority to regulate, and even restrict, hemp production (i.e., the growing of hemp), but nothing in the 2018 Farm Bill permits States to carve out certain hemp derivatives and declare them illegal.  Indeed, the Conference Report for the 2018 Farm Bill explicitly prohibits States from narrowing the definition of "hemp" to exclude hemp derivatives that federal law permits: "[States] are not authorized to alter the definition of hemp …."  Conference Report for Agricultural Improvement Act of 2018, p. 738.

Third, Defendants contend again that "SEA 516 does not actually prohibit the interstate transportation of smokable hemp."  Opp'n Brief at 9.  As addressed above in Section I.C., there is absolutely nothing in SEA 516 that limits its application to intrastate commerce.  To the

contrary, SEA 516 plainly states that any "delivery" or "possession" of smokable hemp is a criminal act.  Ind. Code § 35–48–4–10.1.  There is no distinction in SEA 516 between interstate or intrastate transport of smokable hemp products; possession equals arrest regardless.

In conclusion, it bears repeating that "the threshold for establishing likelihood of success is low" (*Michigan v. United States Army Corps of Eng'rs*, 667 F.3d 765, 782 (7th Cir. 2011)) and that Plaintiffs need only to show "that it has a better than negligible chance of success …."  *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of U.S. of Am., Inc.*, 549 F.3d 1079, 1096 (7th Cir. 2008) (quotations omitted).  Plaintiffs have easily surmounted this low bar.  SEA 516 should be enjoined because (1) the definition of hemp is narrower than the federal definition in the 2018 Farm Bill due to the exclusion of smokable hemp, which creates a conflict between state and federal law that leads to preemption of SEA 516; (2) impeding the transport of hemp by criminalizing all possession of smokable hemp is expressly prohibited by federal law; and (3) prohibiting the transport of smokable hemp through threat of criminal sanction violates the Commerce Clause.  Plaintiffs have demonstrated a likelihood of success on the merits.

## II.    Plaintiffs will suffer irreparable harm absent an injunction.

Plaintiffs do not have an adequate legal remedy because monetary losses are unknowable, and potential criminal sanctions constitute irreparable harm.  Defendants present two arguments in response.  First, Defendants contend – without any citation to authority – that the prospect of arrest for violating SEA 516 does not constitute irreparable harm; it is only after Plaintiffs "currently face charges or penalties" that Plaintiffs have suffered a harm.  Opp'n Brief at 10.  Second, Defendants argue that unquantifiable lost profits do not constitute irreparable harm.  *Id.*  Neither of these arguments have merit.

First, Defendants' contention that Plaintiffs must be arrested for violating SEA 516 before they have standing to assert irreparable harm is incorrect. Numerous federal courts across the country have rejected that very contention. *See, e.g., Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) ("Santiago has demonstrated a credible threat of prosecution under the statute and the organizational plaintiffs have shown ongoing harms to their organizational missions as a result of the statute. Thus, the plaintiffs have established a likelihood of irreparable harm."); *Jackson v. City of Markham, Ill.*, 773 F. Supp. 105, 109 (N.D. Ill. 1991) (finding the plaintiff established irreparable harm because "[i]n the instant case, no criminal prosecution is pending, but the threat of further prosecution is very real"); *Barker v. Hershey*, 309 F. Supp. 277, 280 (W.D. Wis. 1969) (finding that the risk of prosecution for failing to report for military duty constituted irreparable harm). Indeed, the entire point of seeking a judicial declaration of the constitutionality of a statute is to avoid having to place oneself in jeopardy of prosecution. This Court has previously confirmed that an injunction is a proper remedy when challenging the constitutionality of a statute. *Planned Parenthood of Indiana & Kentucky, Inc. v. Comm'r, Indiana State Dep't of Health in his official capacity*, No. 1:13-CV-01335-JMS, 2015 WL 4065441, at *1 (S.D. Ind. July 2, 2015) (seeking declaratory and injunctive relief when challenging state statutes as unconstitutional).

Defendants also argue that lost profits do not constitute irreparable harm. Opp'n Brief at 10. That may be true, but it is not the argument Plaintiffs advance. As clearly stated in Plaintiffs' opening brief (p. 11), Plaintiffs do not merely contend that lost profits from the inability to sell smokable hemp equate to irreparable harm, but rather that those monetary losses are "unknowable" (i.e., unable to be calculated). The hemp industry, including smokable hemp, is new to Indiana and Plaintiffs have no historical sales to use as a baseline for calculating lost

14

revenues due to SEA 516 (which just became operative July 1, 2019).  Where damages are unknown and cannot be calculated reliably, there is no adequate remedy at law.  *See Promatek Indus., Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir.2002) (concluding that the plaintiff lacked an adequate remedy at law "[b]ecause of the difficulty in assessing the damages associated with a loss of goodwill"); *Lawson Prods., Inc. v. Avnet, Inc.,* 782 F.2d 1429, 1440 (7th Cir. 1986) (noting that "the difficulty in calculating future profits can often justify the finding of an irreparable injury with no adequate remedy at law").

Defendants also speculate – again without citing to any authority or evidence – that "the regulation of smokable hemp does not seem 'likely to be crippling.'"  Opp'n Brief at 11.  While the amount is not easily quantified (as discussed above), the projections show that the smokable hemp market nationally is projected to grow to $70.6 million in 2019, up from $11.7 million in 2018.  *See **Exhibit 9***.  That represents a 603% increase in one year, to say nothing of 2020 and beyond.  The prohibition on smokable hemp, including derivatives like hemp bud and hemp flower (which are the most profitable part of the hemp plant for a CBD farmer), would have a substantial adverse effect on farmers, wholesalers, and retailers.  Plaintiffs have demonstrated irreparable harm.

**III.    The balance of harms and public interest weigh in Plaintiffs' favor.**

The public interest and balance of harms favors an injunction.  Defendants contend that outlawing smokable hemp is necessary because law enforcement does not currently possess the proper tools to test the THC concentration of smokable hemp and, therefore, cannot distinguish between hemp and marijuana due to the similar look and smell.  Opp'n Brief at 11-12.  Defendants cite to anecdotal evidence of alleged difficulties in South Carolina and Florida –

states that have adopted the full federal definition of hemp – in distinguishing between the legal hemp products and illegal marijuana. *Id.*

First, Defendants' own evidence undermines its claim that the only way to effectively deal with smokable hemp is to outlaw it. The South Carolina article discusses that testing to determine the amount of THC can be done in state labs, and that local labs may be brought in to help reduce the backlog. The Florida article contends that law enforcement may no longer be able to search a vehicle or residence based on the smell of marijuana alone, but the article also states that courts in Nevada, Maryland, Arizona, and California have already found that the smell of cannabis is still enough for a warrantless search. The fact that local law enforcement needs to change tactics and training based on changes to federal law is not a sufficient basis to pass legislation that conflicts with federal law.

Second, Indiana has already addressed the concerns of law enforcement in other legislation by providing funding for the State Police to purchase the proper THC testing equipment, and by substantially enhancing penalties for passing off illegal drugs as a low THC hemp product.

- House Enrolled Act 1001 specifically appropriates $300,000 in fiscal year 2020 to the Indiana State Police for THC testing equipment to help distinguish between legal hemp products and marijuana by determining the levels of THC. *See **Exhibit 10***.

- Indiana Code § 6-2.5-8-7(k) permits the Indiana Department of Revenue to suspend the retail license for one year if someone violates Indiana Code § 35-48-4-10(d)(3) (imposing a level 5 felony on a retailer who knowingly sells marijuana, hash oil, hashish, or salvia that is packaged as low THC hemp extract). Thus, the penalty for a

retailer (which most Plaintiffs are) for disguising marijuana as low-THC hemp is severe.

- Indiana Code § 35-48-4-11(b)(2) provides an enhanced punishment (class A misdemeanor) for anyone who is convicted of knowingly possessing marijuana, hash oil, hashish, or salvia that is packaged in a manner that appears to be low-THC hemp extract.

The foregoing legislation demonstrates that Indiana lawmakers have heard the concerns of law enforcement and addressed them by supplying additional money for proper THC testing equipment and punishing offenders who attempt to exploit the difficulty of distinguishing between hemp and marijuana with the naked eye. Outlawing smokable hemp – and disregarding the definition of hemp in the 2018 Farm Bill – is an overreaction to the challenge facing law enforcement. Additional dollars for proper testing equipment, additional training, and stiffer penalties for violators are all appropriate legislative responses that avoid a conflict with federal law. Despite taking these steps, the Indiana General Assembly nevertheless narrowed the definition of hemp and criminalized the possession of smokable hemp, thereby bringing Indiana into direct conflict with federal law.

To be clear, even if Defendants' law enforcement concerns were legitimate and even if Indiana had not been able to address those concerns through other legislation, it would not preclude the entry of an injunction. Given that Plaintiffs have established a likelihood of success on the merits, the Court must balance any potential harm to Defendants and the public on a "sliding scale" that strongly favors injunctive relief. *Turnell v. Centimark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015). Stated differently, it is always in the public interest to strike down unconstitutional laws. *See Annex Books, Inc. v. City of Indianapolis*, 673 F. Supp. 2d 750, 757

(S.D. Ind. 2009), aff'd sub nom. *Annex Books, Inc. v. City of Indianapolis*, Ind., 624 F.3d 368 (7th Cir. 2010).

Finally, it is worth noting that the entire purpose of the 2014 Farm Bill and the 2018 Farm Bill was to expand the availability of low-THC hemp as a crop for farmers by removing it from a list of illegal substances, and to open up new applications for it use.  The federal government intended to do away with antiquated notions that low-THC hemp was akin to marijuana and should be off limits to farmers.  As stated above, Senator McConnell and Senator Wyden, two of the authors of the 2018 Farm Bill, stated exactly that in tweets and press releases. The purpose of the 2018 Farm Bill to de-stigmatize hemp and open up a new crop for farmers is undermined by SEA 516, which harms all those in the public – from farmers to retailers – who wish to legally sell low-THC hemp, including smokable hemp.  Defendants' concern about distinguishing between hemp and marijuana, no matter how well meaning, does not justify the passage of an unconstitutional statute.

## CONCLUSION

For the foregoing reasons and the reasons stated in Plaintiffs' original motion and supporting brief, Plaintiffs respectfully request that the Court grant Plaintiff's Motion for a Preliminary Injunction and for all other just and equitable relief.

Respectfully submitted,

*/s/ Paul D. Vink*
Paul D. Vink (Atty. #23785-32)
Tyler J. Moorhead (Atty. #34705-73)
Justin E. Swanson (Atty. #30880-02)

BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN  46204
317-684-5000
317-684-5173 fax

> pvink@boselaw.com
> tmoorhead@boselaw.com
> jswanson@boselaw.com
>
> *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing has been served upon the following

counsel of record via the Court's electronic filing service this 22nd day of August, 2019:

> Zachary D. Price
> Robert Rowlett
> Rebecca L. McClain
> Deputy Attorney General
> Office of the Attorney General
> Indiana Government Center South
> 302 W. Washington St., 5th Floor
> Indianapolis, IN 46204
> Zachary.price@atg.in.gov
> Robert.rowlett@atg.in.gov
> Rebecca.mcclain@atg.in.gov

> */s/ Paul D. Vink*
> Paul D. Vink

3703616_1

19