UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| C. Y. WHOLESALE, INC., et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 1:19-cv-02659-SEB-TAB |
| ) | |
| ERIC HOLCOMB, Governor, in his official ) | |
| capacity, et al. ) | |
| ) | |
| Defendants. ) | |

**ORDER GRANTING PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

This cause is before the Court on Plaintiffs' Motion for Preliminary Injunction [Dkt. 3], filed on June 28, 2019. Plaintiffs C.Y. Wholesale, Inc.; CBD Store of Fort Wayne, LLC; Indiana CBD Wellness, Inc.; Indy E Cigs LLC; 5 Star Medicinal Products, LLP; Dreem Nutrition, Inc.; Midwest Hemp Council, Inc.; and El Anar, LLC (collectively, "Plaintiffs") seek to have Defendants Eric Holcomb and the State of Indiana (collectively, "the State") enjoined from enforcing certain provisions of Senate Enrolled Act No. 516 ("SEA 516" or "the Act"), which became effective July 1, 2019. The provisions of SEA 516 challenged in this lawsuit regulate "smokable hemp," including the derivatives "hemp bud" and "hemp flower" more strictly than other forms of hemp and criminalize the manufacture, finance, delivery, or possession of smokable hemp. Plaintiffs do not challenge any other sections of SEA 516. The Court heard arguments on August 28, 2019. Having now considered those arguments, the parties'

1

evidentiary and written submissions, and the controlling principles of law, we hereby <u>GRANT</u> Plaintiffs' Motion for Preliminary Injunction.

**Factual Background**

Plaintiffs are all Indiana businesses that are primarily wholesalers or retailers of hemp products, save for Plaintiff Midwest Hemp Council, Inc., which is an Indiana non-profit corporation that provides information and advocacy for the hemp industry in Indiana and surrounding states. In this lawsuit, Plaintiffs challenge the constitutionality of certain provisions of SEA 516 related to smokable hemp on grounds that they are preempted by federal law and thus violate the Supremacy Clause of the United States Constitution, and/or are violative of the Commerce Clause.

**I.      The 2014 Farm Bill**

On February 7, 2014, President Barack Obama signed into law the Agricultural Act of 2014, Pub. L. No. 113-79 (the "2014 Farm Bill"), which permitted states to grow "industrial hemp" under certain conditions. "Industrial hemp" was defined in the 2014 Farm Bill as the plant Cannabis sativa L., or any part of such plant, "with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 5940(b). The 2014 Farm Bill did not remove industrial hemp from federal controlled substances schedules, however.

On March 26, 2014, then-Governor Mike Pence signed into law Senate Enrolled Act 357, P.L. 165-2014 ("SEA 357"), codified at Indiana Code § 15-15-13, *et seq.*, authorizing the production, possession, scientific study, and commerce of industrial hemp in Indiana in accordance with the 2014 Farm Bill's requirements. SEA 357 also removed

industrial hemp from Indiana's definition of "marijuana" in recognition of its status as a regulated agricultural commodity as well as its low THC-concentration, which renders it non-psychoactive.  IND. CODE § 35-48-1-19.

**II.     The 2018 Farm Bill**

On December 20, 2018, President Donald Trump signed into law the Agriculture Improvement Act of 2018, Pub. L. No. 115-334 (the "2018 Farm Bill"), which removes hemp from the federal schedule of controlled substances and amends the Agricultural Marketing Act of 1946, "to allow States to regulate hemp production based on a state or tribal plan."  H.R. Rep. No. 115-__ at 738 (2018) (Conf. Rep.) (the "Conference Report").  The 2018 Farm Bill also expands the 2014 Farm Bill's definition of hemp to include "the plant Cannabis sativa L. and any part of that plant, *including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not*, with a delta-9 tetrahydrocannabinol [THC] concentration of not more than 0.3 percent on a dry weight basis."  7 U.S.C. § 1639o(1) (emphasis added).

The 2018 Farm Bill explicitly states that "No Preemption" is intended of any law of a state or Indian tribe that "regulates the production of hemp" and "is more stringent" than federal law.  2018 Farm Bill § 10113.  The 2018 Farm Bill is also clear in prohibiting states from restricting the transportation of hemp in interstate commerce, providing as follows:

> (a) RULE OF CONSTRUCTION. – Nothing in this title or an amendment made by this title prohibits the interstate commerce of hemp (as defined

        in section 297A of the Agricultural Marketing Act of 1946 (as added by section 10113) or hemp products.

   (b) TRANSPORTATION OF HEMP AND HEMP PRODUCTS. – No state or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 (as added by section 10113) through the State or the territory of the Indian Tribe, as applicable.

2018 Farm Bill § 10114. The Conference Report for the 2018 Farm Bill addresses these provisions, explaining that, "[w]hile states and Indian tribes may limit the production and sale of hemp and hemp products within their borders, … such states and Indian tribes [are not permitted] to limit the transportation or shipment of hemp or hemp products through the state or Indian territory." Conf. Rep. at 739.

### III. SEA 516

In response to the 2018 Farm Bill, on May 2, 2019, Governor Eric Holcomb signed SEA 516 into law. Mirroring the 2018 Farm Bill, SEA 516 also defines "hemp" as the "plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol [THC] concentration of not more than three-tenths of one percent (0.3%) on a dry weight basis." IND. CODE § 15-15-13-6. SEA 516 legalizes the commercial production of hemp in Indiana, but criminalizes the manufacture, finance, delivery, and possession of a particular subset of hemp, to wit, "smokable hemp," which SEA 516 defines as "a product containing not more than three-tenths percent (0.3%) delta-9-tetrahydrocannabinol (THC), including precursors and derivatives of THC, in a form that allows THC to be introduced into the human body by

4

inhalation of smoke," which specifically includes the derivatives "hemp bud" and "hemp flower."  IND. CODE § 35-48-1-26.6.  The provision of SEA 516 criminalizing dealing in smokable hemp provides as follows:

> (a)  A person who:
>      (1) knowingly or intentionally:
>              (A)     manufactures;
>              (B)     finances the manufacture of;
>              (C)     delivers;
>              (D)     finances the delivery of; or
>              (E)     possesses;
>          smokable hemp; or
>      (2) possesses smokable hemp with intent to:
>              (A)     manufacture;
>              (B)     finance the manufacture of;
>              (C)     deliver; or
>              (D)     finance the delivery of;
>          smokable hemp;
>   commits dealing in smokable hemp, a Class A misdemeanor.

IND. CODE § 35-48-4-10.1.  No reference to "production" appears in this list.

### IV.   The Instant Litigation

On June 28, 2019, Plaintiffs filed their Complaint, alleging that the portions of SEA 516 that carve out "smokable hemp" from the federal definition of "hemp," and criminalize its manufacture, finance, delivery, or possession are unconstitutional, either because they are preempted by the 2018 Farm Bill or because they violate the Commerce Clause of the United States Constitution.  Plaintiffs simultaneously moved for a preliminary injunction, seeking to have the Court enjoin the State from enforcing these portions of SEA 516 until a final decision can be reached on the merits in this case.

## Legal Analysis

### I.   Preliminary Injunction Standard

To obtain a preliminary injunction, the moving party must demonstrate: (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; (3) irreparable harm absent the injunction. *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 972 (7th Cir. 2012). If the moving party fails to demonstrate any one of these three threshold requirements, the injunctive relief must be denied. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States, Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008) (citing *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). At this stage of the analysis, "the court decides only whether the plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning …." *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002).

If these threshold conditions are met, the Court must then assess the balance of the harm—the harm to Plaintiffs if the injunction is not issued against the harm to Defendants if it is issued—and determine the effect of an injunction on the public interest. *Girl Scouts*, 549 F.3d at 1086. "The more likely it is that [the moving party] will win [their] case on the merits, the less the balance of harms need weigh in [their] favor." *Id.* at 1100.

## II.     Likelihood of Success on the Merits

Plaintiffs claim that SEA 516's provisions criminalizing the manufacture, finance, delivery, or possession of smokable hemp conflict with portions of the 2018 Farm Bill and are thus preempted by federal law under either a theory of express or conflict

preemption. Alternatively, Plaintiffs argue that these provisions of SEA 516 are violative of the Commerce Clause. We address these arguments in turn below.

### A.     Express Preemption

"Express preemption applies when Congress clearly declares its intention to preempt state law." *Nelson v. Great Lakes Educ. Servs., Inc.*, 928 F.3d 639, 646 (7th Cir. 2019) (citing *Mason v. SmithKline Beecham Corp.*, 596 F.3d 387, 390 (7th Cir. 2010)). Here, the 2018 Farm Bill explicitly provides as follows: "No State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 (as added by section 10113) through the State or the territory of the Indian Tribe, as applicable." 2018 Farm Bill § 10114.

Plaintiffs argue that, by criminalizing the manufacture, finance, delivery, or possession of smokable hemp, which is defined under SEA 516 to specifically include hemp bud and hemp flower, the Act precludes the transportation of hemp or hemp products in or through Indiana, in direct contravention of the 2018 Farm Bill's express prohibition on restricting the transportation of hemp and its derivatives in interstate commerce. *See* Pls.' Exh. 5 to Compl. at 9 (Memo. from USDA General Counsel) (concluding that the 2018 Farm Bill "preempts State law to the extent such State law prohibits the interstate transportation or shipment of hemp that has been produced in accordance with subtitle G of the [Agricultural Marketing Act]").

The State's only response to Plaintiff's express preemption claim is the contention that the challenged provisions of SEA 516 apply solely to *intra*state activity and therefore

are not preempted by the 2018 Farm Bill, which explicitly provides that it does not "preempt or limit[] any law of a State or Indian tribe that—(i) regulates the production of hemp; and (ii) is more stringent than this subchapter." 7 U.S.C. § 1639p(a)(3)(A); *see also* Conf. Rep. at 739 ("[S]tates and Indian tribes may limit the production and sale of hemp and hemp products within their borders …."). The State concedes, however, that there is no such limiting language in SEA 516. Thus, as Plaintiffs argue, a driver traveling along I-74 from Ohio to Illinois who passes through Indiana with smokable hemp in the vehicle, including hemp bud or hemp flower, would be in "possession" of smokable hemp and thus subject to arrest and criminal penalties under SEA 516. Similarly, if a driver were transporting smokable hemp from Ohio on that same route through Indiana for delivery in Illinois, he or she would be "possess[ing] smokable hemp with intent to … deliver it," in violation of SEA 516. Accordingly, the challenged provisions of the Act in effect prevent the "transportation" of hemp derivatives through Indiana and thus impede the interstate commerce of hemp in contravention of the 2018 Farm Bill's express prohibition on state laws that do so.

  The State relies heavily on the fact that the 2018 Farm Bill permits states to impose stricter regulations on the "production" of hemp within state borders to support its argument that the challenged provisions of SEA 516 are not expressly preempted, and, in fact, are supported by the 2018 Farm Bill's anti-preemption language. However, this argument ignores the fact that SEA 516's provisions criminalizing smokable hemp on their face do not exclude interstate activity. Additionally, the anti-preemption language on which the State relies specifically references more stringent in-state regulation only of

the *production* of hemp, which the USDA's General Counsel has explained means that states may continue to enforce laws "prohibiting the *growing* of hemp" within their borders. Memo. from USDA Gen. Counsel at 2 (emphasis added). Thus, Indiana is free, for example, to place limits on the acreage that can be used to grow hemp, or to dictate the type of seeds that can be used, or to impose setback restrictions. The State concedes, however, that the challenged provisions of SEA 516 reach beyond the production or growing of hemp within Indiana.

In sum, the 2018 Farm Bill clearly provides that states may not pass laws that interfere with the right to transport in interstate commerce hemp—including hemp derivatives like hemp bud and hemp flower—that has been lawfully produced under a State or Tribal plan or under a license issued under the USDA plan. Indiana's law criminalizing the manufacture, finance, delivery, and possession of smokable hemp without limiting the prohibition to intrastate activity does just that. For these reasons, we find that Plaintiffs have shown a strong likelihood of success on the merits of their claim that the challenged provisions of SEA 516 are expressly preempted by the 2018 Farm Bill.

### B. Conflict Preemption

Although admittedly a closer question, we also find, based on the limited record before us, that Plaintiffs have also shown at least some likelihood of success on their conflict preemption claim. "To show conflict preemption, [the plaintiff] must show either that it would be 'impossible' … to comply with both state and federal law or that state law … constitutes an 'obstacle' to satisfying the purposes and objectives of

9

Congress." *Nelson*, 928 F.3d at 650.  Here, Plaintiffs contend that the challenged provisions of SEA 516 criminalizing smokable hemp constitute an obstacle to satisfying the 2018 Farm Bill's objective of legalizing all low-THC hemp products, including all hemp derivatives.

What constitutes a sufficient obstacle for conflict preemption "is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects…." *Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000).  "We ascertain the intent of Congress, however, through a lens that presumes that the state law has not been preempted." *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1046 (7th Cir. 2013).  "In preemption analysis, courts should assume that the historic police powers of the States are not superseded unless that was the clear and manifest purpose of Congress." *Arizona v. United States*, 567 U.S. 387, 400 (2012) (internal citations and quotation marks omitted).

"When interpreting congressional statutes, we first look at the plain language of the statute because that is the best way to determine congressional intent." *O'Kane v. Apfel*, 224 F.3d 686, 688 (7th Cir. 2000).  Here, the plain language of the 2018 Farm Bill, as well as statements from its legislative sponsors, reflect Congress's intent to de-stigmatize and legalize all low-THC hemp, including its derivatives and extracts, and to treat hemp as a regulated agricultural commodity in the United States.  As discussed above, the 2018 Farm Bill expands the federal definition of hemp beyond that set forth in the 2014 Farm Bill to specifically include hemp derivatives and extracts, such as hemp bud and hemp flower, and removes low-THC hemp from federal controlled substance

schedules. Plaintiffs have shown at least some likelihood of establishing that the challenged provisions of SEA 516, which criminalize the manufacture, finance, delivery, and possession of hemp bud and hemp flower—hemp derivatives of the kind specifically legalized under the 2018 Farm Bill—frustrates these congressional purposes and objectives. *See Frank Bros., Inc. v. Wisconsin Dep't of Transp.*, 409 F.3d 880, 894 (7th Cir. 2005) ("[T]he crucial inquiry is whether [state law] differs from [federal law] in such a way that achievement of the congressional objective … is frustrated.") (citations and quotation marks omitted).

The State argues that Plaintiffs have not shown a likelihood of success on their conflict preemption claim because there is no evidence that Congress even contemplated, let alone had the purpose or objective of, legalizing smokable hemp with the passage of the 2018 Farm Bill. In support of this argument, the State cites a 2018 report to Congress by the Congressional Research Service ("CRS"), issued several months prior to the passage of the 2018 Farm Bill, which identifies and discusses industrial uses for hemp, including fiber, seed, and oil. The State argues that the report nowhere identifies smokable hemp as a use of hemp, and thus, that there is no evidence that Congress intended the 2018 Farm Bill to preempt states from restricting smokable hemp.

However, without addressing whether a CRS research paper is sufficiently authoritative in this context to inform a statutory analysis, we note that, while it does not discuss smokable hemp, it does address hemp flower in its discussion of industrial uses of hemp, referencing the fact that "[i]ndustry groups maintain that … naturally occurring THC in the leaves and flowers of cannabis varieties grown for fiber and food is already at

11

below-psychoactive levels …." Defs.' Exh. A at 21.  The report also references confusion in the hemp industry following the passage of the 2014 Farm Bill and a 2016 joint statement on industrial hemp issued by the DEA, USDA, and FDA regarding whether the federal definition of "industrial hemp" set forth in the 2014 Farm Bill excluded hemp flower.  Following issuance of this report, Congress removed the qualifier "industrial" when referring to hemp in the 2018 Farm Bill and broadened the definition to explicitly include derivatives and extracts of hemp (like hemp bud and hemp flower).  The 2018 Farm Bill's expansion of the federal definition of hemp and removal of all low-THC hemp from the federal list of controlled substances evinces a clear congressional objective to legalize all forms of low-THC hemp, including the hemp derivatives specifically criminalized under SEA 516.

  The State also argues that the 2018 Farm Bill's anti-preemption provision permitting states to enact stricter regulations on hemp production reveals the congressional intent to permit states to exercise their police powers to restrict hemp production within their own borders, thus establishing that the bill does not preempt Indiana's criminalization of smokable hemp.  We acknowledge, as Plaintiffs' counsel did at the preliminary injunction hearing, that the anti-preemption provision in the 2018 Farm Bill permits states to regulate the production of hemp within their borders more strictly than does the federal government.  However, as discussed above, the challenged portions of SEA 516 that criminalize smokable hemp reach well beyond growing restrictions and thus do not constitute regulations on hemp production that come within the 2018 Farm Bill's express anti-preemption provision.  Accordingly, while instructive as to Congress's

intent in permitting states to individually regulate hemp production within their borders, the anti-preemption provision does not salvage the State's argument here. *See* Memo. from USDA Gen. Counsel at 8 n.15 (explaining that "the anti-preemption provision is limited to the *production* of hemp").

For these reasons, we hold that Plaintiffs have, at this early stage of the litigation, shown at least some likelihood of establishing that the challenged portions of SEA 516 criminalizing smokable hemp, including hemp bud and hemp flower, stand as an obstacle to the accomplishment and execution of Congress's federal interest in legalizing all low-THC hemp and its derivatives and extracts and are thus preempted.[1]

### III. Irreparable Harm and Inadequate Remedy at Law

In addition to showing that they have a likelihood of success on the merits of their claims, Plaintiffs are also required to show that, absent injunctive relief, they will suffer irreparable injury for which there is no adequate remedy at law. These requirements merge in most cases, in recognition of the fact that irreparable harm is "probably the most common method of demonstrating that there is no adequate legal remedy." *Campbell v. Miller*, 373 F.3d 834, 840 (7th Cir. 2004) (citations and quotation marks omitted). "Irreparable harm is harm which cannot be repaired, retrieved, put down again, atoned for …. [T]he injury must be of a particular nature, so that compensation in money cannot atone for it." *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 296 (7th Cir. 1997) (internal

---

[1] Because we have found that Plaintiffs have shown a likelihood of success on the merits of their preemption claims, we need not address their alternative arguments under the Commerce Clause, which we find less convincing.

quotation and citation omitted).  To preclude a grant of equitable relief, "an available remedy at law must be plain, clear and certain, prompt or speedy, sufficient, full and complete, practical, efficient to the attainment of the ends of justice, and final." *Interstate Cigar Co. v. United States*, 928 F.2d 221, 223 (7th Cir. 1991) (citation and quotation marks omitted).

Here, Plaintiffs have shown that, without the relief they seek, they will be subject to irreparable harm in the form of a credible threat of criminal sanctions.  *See Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013) (holding that likelihood of irreparable harm established by "demonstrat[ing] a credible threat of prosecution under the statute …").  Moreover, a misdemeanor conviction under the smokable hemp provisions would prevent Plaintiffs from obtaining a license to grow or handle legal hemp in Indiana for at least ten years.  IND. CODE § 15-15-13-7(c)(5).  With regard to potential lost profits, we are not persuaded that Plaintiffs can be made whole with money damages as the financial losses they stand to suffer by complying with the likely unconstitutional portions of the statute cannot be easily measured or reliably calculated, given the novelty of the hemp industry in Indiana and the dearth of historical sales data to use as a baseline for calculating lost revenues stemming from SEA 516.  *See Lawson Prods., Inc. v. Avnet, Inc.*, 782 F.2d 1429, 1440 (7th Cir. 1986) (recognizing that "the difficulty in calculating future profits can often justify the finding of an irreparable injury with no adequate remedy at law").

For these reasons, we find that Plaintiffs have shown that, in the absence of preliminary injunctive relief, they are likely to suffer irreparable harm for which they have no adequate remedy at law.

### IV.     Balance of Harms and Public Interest

As discussed above, the Court uses a "sliding scale" when balancing the harms and the public interest. *Turnell v. CentiMark Corp.*, 796 F.3d 656, 662 (7th Cir. 2015). Because Plaintiffs have demonstrated a strong likelihood of success on the merits on their claim that the challenged provisions of SEA 516 are expressly preempted by federal law, "the court must issue an injunction even if the balance of harms does not overwhelmingly weigh in [their] favor." *Huntley v. Wexford of Ind., LLC*, No. 3:18-CV-205-PPS-MGG, 2018 WL 4039362, at * 20 (N.D. Ind. Aug. 22, 2018) (citing *id.*).

Absent an injunction, Plaintiffs will suffer the irreparable harms discussed above, namely, a credible threat of criminal prosecution that could affect Plaintiffs' subsequent ability to procure a license to grow or handle legal hemp as well as an untold amount of lost profits. On the other hand, if injunctive relief is granted and smokable hemp is legalized in Indiana, the State argues that law enforcement will likely face significant obstacles in their ability to enforce Indiana's laws against marijuana. The State has presented evidence that, due to the similarities in look and smell between smokable hemp and marijuana, law enforcement officers are generally unable to distinguish between the two substances without a laboratory-conducted scientific test of THC levels.

In support of this argument, the State cites difficulties faced in states where smokable hemp is legal, like South Carolina and Florida. In South Carolina, the state has

15

had to expend additional resources to purchase new equipment to conduct the necessary testing and law enforcement officials have reported anticipating a large backlog in the processing of marijuana cases. Defs.' Exh. E. In Florida, one state attorney expressed concern regarding whether law enforcement would still have probable cause to conduct searches based on the smell of marijuana, given that smokable hemp has the same odor, and also noted that scientific testing would have to be performed on suspected marijuana in every case before any criminal charges could be filed. Defs.' Exh. F.

We recognize that the State has a legitimate interest in protecting local law enforcement's efforts to enforce Indiana's drug laws and that, as is the case whenever a legislative change occurs, the State may face additional challenges during the adjustment period if the possession of smokable hemp is legalized in Indiana. Plaintiffs have countered with evidence demonstrating that the State has already begun to address these challenges, however, by earmarking additional funding to enable the State Police to purchase the proper THC testing equipment as well as by substantially enhancing penalties for knowingly selling marijuana that is packaged as low-THC hemp extract. In any event, as Plaintiffs argue, the fact that local law enforcement may need to adjust tactics and training in response to changes in federal law is not a sufficient basis for enacting unconstitutional legislation.

Accordingly, given that Plaintiffs have shown a likelihood of prevailing on the merits of their claim that the challenged provisions of SEA 516 are preempted by federal law, the balance of harms weighs in Plaintiffs' favor. For these same reasons, the public interest also supports the issuance of the injunction Plaintiffs seek. *See Planned*

*Parenthood of Ind. and Ky. v. Comm'r of Ind. State Dep't of Health*, 984 F. Supp. 2d 912, 931 (S.D. Ind. 2013) (recognizing that the public "do[es] not have an interest in the enforcement of a statute that … [the plaintiff] has shown likely violates the [Constitution].").

### V.     Bond

In cases involving constitutional rights, this court and other district courts in this circuit have declined to require plaintiffs to post a bond. *See, e.g., Ogden v. Marendt*, 264 F. Supp. 2d 785, 795 (S.D. Ind. 2003); *see also BankDirect Capital Fin., LLC v. Capital Premium Financing, Inc.*, 912 F.3d 1054, 1058 (7th Cir. 2019) ("A judge might consider an indemnity of $0 (that is, no bond) 'proper' when the suit is about constitutional principles …."). Because this case involves constitutional principles and the State has put forth no argument as to the bond issue, no bond will be required of Plaintiffs.

### VI.    Conclusion

For the reasons detailed above, Plaintiffs' Motion for Preliminary Injunction is GRANTED. Defendants are hereby PRELIMINARILY ENJOINED until further order of this Court from enforcing the portions of SEA 516 that criminalize the manufacture, financing, delivery, or possession of smokable hemp, which are codified at Indiana Code § 35-48-4-10.1 (criminal penalties for smokable hemp). Defendants are HEREBY FURTHER ORDERED to inform forthwith all the affected Indiana state governmental entities of this injunction. All other provisions of SEA 516 shall remain in effect, pursuant to the Indiana Code's severability clause. *See* IND. CODE § 1-1-1-8 ("If any

provision of this Code as now or later amended or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions that can be given effect without the invalid provision or application.").

    IT IS SO ORDERED.

Date: 9/13/2019

                                          *Sarah Evans Barker*

                                          SARAH EVANS BARKER, JUDGE
                                          United States District Court
                                          Southern District of Indiana

Distribution:

All electronically registered counsel of record