UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| C. Y. WHOLESALE, INC., et al. ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | No. 1:19-cv-02659-SEB-TAB |
| ) | |
| ERIC HOLCOMB, et al. ) | |
| ) | |
| Defendants. ) | |

**ORDER DENYING PLAINTIFFS' RENEWED MOTION FOR PRELIMINARY INJUNCTION**

Now before the Court is Plaintiffs' Renewed Motion for Preliminary Injunction [Dkt. 50], filed on November 20, 2020 and fully briefed on January 6, 2021.  Plaintiffs C.Y. Wholesale, Inc.; CBD Store of Fort Wayne, L.L.C.; Indiana CBD Wellness, Inc.; Indy E Cigs LLC; 5 Star Medicinal Products, LLP; Dreem Nutrition, Inc.; El Anar, LLC; OM Shiva Corporation; P&N Wholesalers; Hemp Jefe, LLC; Falling Waters Farm, LLC; Mako, Inc.; Agrozen Life Sciences, LLC; Indy CBD Plus LLP; Hemp Alliance of Tennessee (collectively, "Plaintiffs") seek to have Defendants Eric Holcomb, in his official capacity as Governor of Indiana, and the State of Indiana (collectively, "the State") enjoined from enforcing certain provisions of Senate Enrolled Act No. 516 ("SEA 516") and Senate Enrolled Act No. 335 ("SEA 335") relating to the regulation and criminalization of "smokable hemp," including the derivatives "hemp bud" and "hemp flower."  For the reasons detailed below, we DENY Plaintiffs' Motion.

1

## **Procedural History**

The original complaint and motion for preliminary injunction in this matter were filed on June 28, 2019, by a group of Indiana wholesalers and retailers of hemp products, challenging the constitutionality of SEA 516, which prohibits the finance, delivery, manufacture, and possession of smokable hemp, including hemp bud and hemp flower. On September 13, 2019, following briefing and oral argument on Plaintiffs' request for a preliminary injunction, this court granted Plaintiffs' motion and enjoined Defendants from enforcing SEA 516 as it relates to the criminalization of the possession, manufacture, financing, or delivery of smokable hemp in Indiana on preemption grounds. Specifically, we ruled that Plaintiffs were likely to succeed in establishing that the provisions of SEA 516, which criminalize the manufacture, finance, delivery, and possession of smokable hemp without limiting the prohibition to intrastate activity, were expressly preempted by the 2018 Farm Bill. We held that Plaintiffs had also demonstrated at least some likelihood of success in establishing that the challenged provisions of SEA 516 criminalizing smokable hemp were conflict preempted because they constituted an obstacle to the 2018 Farm Bill's objective of legalizing all low-THC hemp products, including all hemp derivatives.

Defendants appealed our decision, the matter was briefed on appeal, and the Seventh Circuit heard oral argument on April 14, 2020. After briefing was complete, but before oral argument was conducted, Defendants enacted SEA 335, which limits the scope of SEA 516 in an apparent attempt to cure any ambiguity in the statute that could have given rise to a problem with the 2018 Farm Bill's express preemption clause. As

relevant here, SEA 335 provides that Indiana's prohibition on the delivery and possession of smokable hemp does "not apply to the shipment of smokable hemp from a licensed producer in another state in continuous transit through Indiana to a licensed handler in any state." IND. CODE § 35-48-4-10.1(c).

On July 8, 2020, the Seventh Circuit reversed our preliminary injunction, holding that, as we had framed it, the injunction was overly broad. The Seventh Circuit further clarified that it's holding "should not be misunderstood as saying that a properly tailored injunction is not warranted," as "[a] state cannot evade the Farm Law's express preemption of laws prohibiting the interstate transportation of industrial hemp by criminalizing its possession and delivery." *C.Y. Wholesale, Inc. v. Holcomb*, 965 F.3d 541, 548–49 (7th Cir. 2020). The court of appeals indicated that "a more limited injunction of [SEA] 516 that addresses only transit through the state, along with ancillary restrictions on the possession and delivery of smokable hemp to the extent that those provisions interfere with that transit" might have been warranted on express preemption grounds. *Id.* at 547.

Regarding Plaintiffs' conflict preemption claim, the Seventh Circuit held that Plaintiffs failed to demonstrate a likelihood of success on the merits of that claim because "nothing in the 2018 Farm Law … supports the inference that Congress was demanding that states legalize industrial hemp, apart from the specific provisions of the express preemption clause." *Id.* at 548. The case was thus remanded to our court and the Seventh Circuit issued its mandate on August 18, 2020.

On remand, Plaintiffs were permitted to amend their complaint to address SEA 335 and to add additional Plaintiffs, which they did, including the Hemp Alliance of Tennessee.  Plaintiffs' amended complaint alleges that SEA 516 violates the 2018 Farm Bill's prohibition on restricting the interstate transport of hemp products, a problem which they claim was not remedied by SEA 335 because SEA 335 imposes licensing requirements that are not included in the 2018 Farm Bill; thus, Plaintiffs now allege that both statutes are expressly preempted.  Plaintiffs also allege that the criminalization of hemp bud and hemp flower in SEA 516 modifies the federal definition of hemp, thereby conflicting with the 2014 Farm Bill's legalization of all parts of the hemp plant, including hemp bud and flower, and the 2018 Farm Bill's reaffirmation of the legalization of all parts of the hemp plant and its clear prohibition against states modifying the federal definition of hemp and is therefore conflict preempted.  Plaintiffs have filed a renewed motion for preliminary injunction, seeking to have Defendants enjoined from enforcing on preemption grounds the sections of SEA 516 and SEA 335 that criminalize and restrict smokable hemp, including hemp bud and hemp flower.  Defendants oppose Plaintiffs' renewed motion.

## Factual Background[1]

All Plaintiffs, apart from the Hemp Alliance of Tennessee, are Indiana wholesalers or retailers of hemp products who wish to distribute and sell hemp bud and hemp flower

---

[1] Because many of the facts remain unchanged from those set forth in our order granting Plaintiffs' original motion for preliminary injunction, we revisit and revise our factual recitation only as necessary to account for relevant subsequent changes.

products in Indiana. Plaintiff C.Y. Wholesale Inc., in addition to conducting wholesale operations in Indiana, also arranges shipments of hemp from non-licensed producers in other states through Indiana to non-licensed handlers in other states. Plaintiff Hemp Alliance of Tennessee is a trade association "comprised of members that are non-licensed producers and handlers that ship and receive hemp, including hemp bud and hemp flower through Indiana to and from non-licensed handlers and producers in other states." Am. Compl. ¶ 23. As discussed above, Plaintiffs challenge the constitutionality of certain provisions of SEA 516 and SEA 335 relating to smokable hemp on grounds that they are preempted by federal law and thus violate the Supremacy Clause of the United States Constitution.

## I.     The 2014 Farm Bill

On February 7, 2014, President Barack Obama signed into law the Agricultural Act of 2014, Pub. L. No. 113-79 (the "2014 Farm Bill"), which permitted states to grow "industrial hemp" under certain conditions, namely, if it was grown "for purposes of research conducted under an agricultural pilot program or other agricultural or academic research" and those activities were allowed under the relevant state's laws. 7 U.S.C. § 5940(a). "Industrial hemp" was defined in the 2014 Farm Bill as the plant Cannabis sativa L., or any part of such plant, "with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 5940(b). The 2014 Farm Bill did not remove industrial hemp from federal controlled substances schedules, however.

On March 26, 2014, then-Governor Mike Pence signed into law Senate Enrolled Act 357, P.L. 165-2014 ("SEA 357"), codified at Indiana Code § 15-15-13, *et seq.*, authorizing the production, possession, scientific study, and commerce of industrial hemp in Indiana in accordance with the 2014 Farm Bill's requirements. SEA 357 also removed industrial hemp from Indiana's definition of "marijuana" in recognition of its status as a regulated agricultural commodity as well as its low THC-concentration, which renders it non-psychoactive. IND. CODE § 35-48-1-19. Under Indiana Code § 15-15-13 *et seq.*, anyone wishing to grow or handle hemp for commercial or research purposes is required to obtain a license from the Indiana State Seed Commissioner by partnering with an institution of higher education, registering the cultivation site(s) via GPS coordinates, and passing a background check, among other requirements. Since 2014, the Indiana Office of the State Chemist has issued over 1,000 licenses to Indiana growers and handlers authorizing the production of approximately 15,000 acres of hemp.

**II.    The 2018 Farm Bill**

On December 20, 2018, President Donald Trump signed into law the Agriculture Improvement Act of 2018, Pub. L. No. 115-334 (the "2018 Farm Bill"), which removed hemp from the federal schedule of controlled substances, named the United States Department of Agriculture the sole federal regulator of hemp production, and amended the Agricultural Marketing Act of 1946, "to allow States to regulate hemp production based on a state or tribal plan." H.R. Rep. No. 115-__ at 738 (2018) (Conf. Rep.) (the "Conference Report"). The 2018 Farm Bill also expands the 2014 Farm Bill's definition of hemp to include "the plant Cannabis sativa L. and any part of that plant, *including the*

6

*seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not*, with a delta-9 tetrahydrocannabinol [THC] concentration of not more than 0.3 percent on a dry weight basis." 7 U.S.C. § 1639o(1) (emphasis added).

The 2018 Farm Bill explicitly states that "No Preemption" is intended of any law of a state or Indian tribe that "regulates the production of hemp" and "is more stringent" than federal law. 2018 Farm Bill § 10113. The 2018 Farm Bill is also clear in its prohibition of states' restrictions of the transportation of hemp in interstate commerce, providing as follows:

> (a) RULE OF CONSTRUCTION. – Nothing in this title or an amendment made by this title prohibits the interstate commerce of hemp (as defined in section 297A of the Agricultural Marketing Act of 1946 (as added by section 10113) or hemp products.
>
> (b) TRANSPORTATION OF HEMP AND HEMP PRODUCTS. – No state or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 (as added by section 10113) through the State or the territory of the Indian Tribe, as applicable.

2018 Farm Bill § 10114. The Conference Report for the 2018 Farm Bill addresses these provisions, explaining that, "[w]hile states and Indian tribes may limit the production and sale of hemp and hemp products within their borders, … such states and Indian tribes [are not permitted] to limit the transportation or shipment of hemp or hemp products through the state or Indian territory." Conf. Rep. at 739. The Report further states that "state and Tribal governments are authorized to put more restrictive parameters on the production of

7

hemp, but are not authorized to alter the definition of hemp or put in place policies that are less restrictive. *Id.* at 738.

### III. SEA 516

In response to the 2018 Farm Bill, on May 2, 2019, Governor Eric Holcomb signed SEA 516 into law. Mirroring the 2018 Farm Bill, SEA 516 defines "hemp" as the "plant Cannabis sativa L. and any part of that plant, including the seeds thereof and all derivatives, extracts, cannabinoids, isomers, acids, salts, and salts of isomers, whether growing or not, with a delta-9 tetrahydrocannabinol [THC] concentration of not more than three-tenths of one percent (0.3%) on a dry weight basis." IND. CODE § 15-15-13-6. SEA 516 legalizes the commercial production of hemp in Indiana, but criminalizes the manufacture, finance, delivery, and possession of a particular subset of hemp, to wit, "smokable hemp," which SEA 516 defines as "a product containing not more than three-tenths percent (0.3%) delta-9-tetrahydrocannabinol (THC), including precursors and derivatives of THC, in a form that allows THC to be introduced into the human body by inhalation of smoke," which specifically includes the derivatives "hemp bud" and "hemp flower." IND. CODE § 35-48-1-26.6. The provision of SEA 516 criminalizing smokable hemp provides as follows:

> (a) A person who:
>   (1) knowingly or intentionally:
>     (A) manufactures;
>     (B) finances the manufacture of;
>     (C) delivers;
>     (D) finances the delivery of; or
>     (E) possesses;
>   smokable hemp; or
>   (2) possesses smokable hemp with intent to:

      (A)      manufacture;
      (B)      finance the manufacture of;
      (C)      deliver; or
      (D)      finance the delivery of;
smokable hemp;
commits dealing in smokable hemp, a Class A misdemeanor.

IND. CODE § 35-48-4-10.1(a).  "Production" is not included in this list.

### IV.    SEA 335

On March 31, 2020, while this litigation was pending, Governor Holcomb signed into law SEA 335, which, as discussed above, clarifies that SEA 516's prohibitions on the finance, delivery, and possession of hemp bud and hemp flower "do not apply to the shipment of smokable hemp from a licensed producer in another state in continuous transit through Indiana to a licensed handler in any state." IND. CODE § 35-48-4-10.1(c). The criminal sanctions set forth in SEA 516 and SEA 335 still apply to smokable hemp, including hemp bud and hemp flower, that is transported through Indiana by unlicensed parties, however.

### V.    Financial Impact

Plaintiffs allege that the hemp bud and hemp flower portions of the hemp plant are the most lucrative part of hemp produced by hemp farmers. The market is currently valued at $80 million and is projected to grow to a $300 to $400 million market by 2025. Am. Compl. ¶ 52.

## Legal Analysis

### I.     Preliminary Injunction Standard

To obtain a preliminary injunction, the moving party must demonstrate: (1) a reasonable likelihood of success on the merits; (2) no adequate remedy at law; (3) irreparable harm absent the injunction. *Planned Parenthood of Ind., Inc. v. Comm'r of Ind. State Dep't of Health*, 699 F.3d 962, 972 (7th Cir. 2012). If the moving party fails to demonstrate any one of these three threshold requirements, the injunctive relief must be denied. *Girl Scouts of Manitou Council, Inc. v. Girl Scouts of the United States, Inc.*, 549 F.3d 1079, 1086 (7th Cir. 2008) (citing *Abbott Labs. v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)). At this stage of the analysis, "the court decides only whether the plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning …." *AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002).

If these threshold conditions are met, the Court must then assess the balance of the harm—the harm to Plaintiffs if the injunction is not issued against the harm to Defendants if it is issued—and determine the effect of an injunction on the public interest. *Girl Scouts*, 549 F.3d at 1086. "The more likely it is that [the moving party] will win [their] case on the merits, the less the balance of harms need weigh in [their] favor." *Id.* at 1100.

### II.    Express Preemption

"Express preemption applies when Congress clearly declares its intention to preempt state law." *Nelson v. Great Lakes Educ. Servs., Inc.*, 928 F.3d 639, 646 (7th Cir.

10

2019) (citing *Mason v. SmithKline Beecham Corp.*, 596 F.3d 387, 390 (7th Cir. 2010)). The 2018 Farm Bill explicitly provides: "No State or Indian Tribe shall prohibit the transportation or shipment of hemp or hemp products produced in accordance with subtitle G of the Agricultural Marketing Act of 1946 (as added by section 10113) through the State or the territory of the Indian Tribe, as applicable." 2018 Farm Bill § 10114 ("In accordance with subtitle G …" references the requirement that the hemp or hemp products have been produced by an entity licensed either under a state plan or by the federal government.) Plaintiffs argue that SEA 516 and SEA 335, which both criminalize smokable hemp unless it is shipped "from a licensed producer in another state in continuous transit through Indiana to a licensed handler in any state," violates the express preemption clause because the Farm Bill places no licensing limitations on the freedom to transport industrial hemp through states, like Indiana, that regulate or prohibit its production.

We turn first to address Defendants' preliminary contention that Plaintiffs do not have standing to raise their express preemption challenge to Indiana's requirement set forth in SEA 516 and SEA 335 that businesses be licensed in the states in which they do business in order to transport smokable hemp through Indiana. To establish standing, a plaintiff "must demonstrate three things: (1) an 'injury in fact,' which is an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical[]"; (2) a causal relationship between the injury and the challenged conduct, such that the injury can be fairly traced to the challenged action of the defendant and not from the independent action of some third party not

11

before the court; and (3) a likelihood that the injury will be redressed by a favorable decision." *Perry v. Village of Arlington Heights*, 186 F.3d 826, 829 (7th Cir. 1999) (internal citations and quotation marks omitted).

Here, the only two Plaintiffs alleged to be involved in the interstate transport of smokable hemp, who therefore potentially have standing to raise an express preemption challenge, are C.Y. Wholesale and the Hemp Alliance of Tennessee. C.Y. Wholesale is alleged to be a "retailer of hemp products" who also "arranges shipments of hemp from non-licensed producers in other states through Indiana to non-licensed handlers in other states." Am. Comp. ¶ 22. The Hemp Alliance of Tennessee, is alleged to be a non-profit corporation "comprised of members that are non-licensed producers and handlers that ship and receive hemp, including hemp bud and hemp flower, through Indiana to and from non-licensed handlers and producers in other states." *Id.* ¶ 23.

As Defendants contend, however, in order to have standing to raise an express preemption challenge to SEA 516 and SEA 335, although Plaintiffs need not themselves be licensed producers of hemp, they must be engaged in the interstate transport of hemp that is produced "in accordance with subtitle G" in order for their activities to come within the scope of the 2018 Farm Bill's preemption clause. This means that the hemp they ship through Indiana must have been produced by an entity licensed under an approved state plan or by the federal government itself. *See* Dkt. 51-6 at 10. Because Plaintiffs have alleged only that they ship and transport hemp from *unlicensed producers* (or arrange such shipments), they have not shown that the 2018 Farm Bill's preemption clause applies to their activities as they have not alleged they are shipping hemp that is

12

lawfully produced under federal law "in accordance with subtitle G." As such, they have failed to show that they have suffered an injury in fact (or the imminent threat of such an injury) as is required to establish standing to challenge the state statutes.

Plaintiffs concede that the 2018 Farm Bill requires hemp producers, i.e., growers, to obtain a license from their respective state or from the federal government if their state has not yet adopted a plan, but argue that, because they are retailers, wholesalers, and shippers of hemp products, not producers or growers of hemp, they are not required to be licensed in order to transport hemp products in interstate commerce. Plaintiffs claim that their allegations that the Hemp Alliance of Tennessee and C.Y. Wholesale both ship low-THC hemp through Indiana to vendors in other states, some of which do not offer a "handler" license that SEA 335 requires, are sufficient to establish standing to challenge Indiana's licensing requirement.

Plaintiffs' response does not address the particular standing argument Defendants have raised in opposition to Plaintiffs' request for injunctive relief, however.[2] As discussed above, Defendants do not claim that Plaintiffs must be *licensed producers* in order to have standing to challenge the licensing requirement. Rather, they argue that Plaintiffs must be *shipping hemp produced by licensed entities* to be affected by the 2018 Farm Bill's preemption clause. Because Plaintiffs have alleged only that they ship and transport hemp to and from "non-licensed producers" and do not clearly allege that the hemp they ship originates from a licensed producer, they have failed to show that they are

---

[2] We previously rejected a slightly different and less developed standing argument Defendants raised in opposition to Plaintiffs' motion to amend their complaint.

engaged in activities that come within the express preemption clause. Thus, as currently framed, Plaintiffs' allegations fail to support a finding that they have suffered an actual or imminent threat of concrete and particularized injury as it is their burden to establish for standing purposes. *See Perry*, 186 F.3d at 829 ("The party invoking federal jurisdiction bears the burden of establishing the elements of standing."). Accordingly, Plaintiffs have not established that in their challenges to Indiana statutory restrictions they have standing to seek injunctive relief on express preemption grounds.

### III.  Conflict Preemption

We turn next to address Plaintiffs' conflict preemption theory. While it is undisputed that Plaintiffs *do* have standing to bring this challenge, for the reasons detailed below, we find that they have failed to demonstrate a likelihood of success on the merits of that claim and thus are not entitled to injunctive relief. "To show conflict preemption, [the plaintiff] must show either that it would be 'impossible' … to comply with both state and federal law or that state law … constitutes an 'obstacle' to satisfying the purposes and objectives of Congress." *Nelson*, 928 F.3d at 650. Here, Plaintiffs put forth two conflict preemption theories. First, they argue that, by carving out the subset of "smokable hemp" and criminalizing it, SEA 516 and SEA 335 alter the definition of hemp, in direct conflict with the language and intent of the 2014 and 2018 Farm Bills. Second, Plaintiffs claim that the challenged statutes conflict with Congress's overall intent in the 2014 and 2018 Farm Bills to treat all hemp, including hemp bud and hemp flower, as a legal agricultural commodity. For the following reasons, we find it unlikely that Plaintiffs will succeed on either of these arguments.

Plaintiffs maintain that the Seventh Circuit failed to address their first argument, to wit, that the challenged statutes impermissibly alter the definition of hemp by criminalizing and regulating more strictly "smokable hemp" in conflict with the intent of the 2014 and 2018 Farm Bills. Initially, we note that we are not persuaded that Plaintiffs' two designated conflict preemption theories are in fact distinct from each other; it seems more accurate to view the former as a subset of the latter. However, to the extent that they are two separate, standalone theories, while the Seventh Circuit may not have separately addressed Plaintiffs' contention that the carveouts for "smokable hemp" in the challenged statutes impermissibly alter the definition of hemp, the court clearly rejected Plaintiffs' conflict preemption claim as a whole, explicitly recognizing that SEA 516 "brings Indiana's definition of industrial hemp into line with the 2018 federal definition…." *C.Y. Wholesale*, 965 F.3d at 544.

Moreover, following the issuance of the appellate decision, Plaintiffs filed a petition for rehearing with the Seventh Circuit, based in part on the court's alleged failure to address their theory that SEA 516 and SEA 335 are conflict preempted because they narrow the definition of hemp. Upon review of Plaintiffs' petition, which thoroughly briefed Plaintiffs' argument in support of their theory, the Seventh Circuit denied rehearing, a further indication that Plaintiffs' argument did not and would not change the court's view regarding Plaintiffs' likelihood of success in establishing conflict preemption. Given these clear indications of the Seventh Circuit's rejection of Plaintiffs' altered hemp definition argument, we see no new evidence or reasoning in Plaintiffs'

submissions to support their renewed motion for injunctive relief such that it establishes a likelihood of prevailing on the merits on their conflict preemption theory.

Plaintiffs fare no better as to their second theory, to wit, that the challenged statutes are conflict preempted because they obstruct Congress's overall intent in the 2014 and 2018 Farm Bills to treat all hemp, including hemp bud and hemp flower, as a legal agricultural commodity. The Seventh Circuit has explicitly rejected this theory, at least with regard to Congress's intent in the 2018 Farm Bill, finding "nothing in the 2018 Farm Law that supports the inference that Congress was demanding that states legalize industrial hemp, apart from the specific provisions of the express preemption clause." *Id.* at 548. Plaintiffs argue that the Seventh Circuit's holding is not dispositive here because Plaintiffs' reliance is now on both the 2014 and 2018 Farm Bills, rather than on the 2018 Farm Bill alone to support their conflict preemption claim. However, we agree with Defendants that this distinction is irrelevant, given that the Seventh Circuit's reasoning behind its conclusion of a lack of evidence in the 2018 Farm Bill of Congressional intent to require states to legalize industrial hemp applies equally to the 2014 Farm Bill.

For these reasons, Plaintiffs have failed to establish a likelihood of success on the merits of their claim that SEA 516 and SEA 335 are conflict preempted. Accordingly, they are not entitled to injunctive relief. We need not—and do not—address any of the remaining legal requirements for an entitlement to injunctive relief.

## IV. Conclusion

For the foregoing reasons, Plaintiffs' Renewed Motion for Preliminary Injunction [Dkt. 50] is <u>DENIED</u>.

IT IS SO ORDERED.

Date:  2/22/2021                           _____
                                            SARAH EVANS BARKER, JUDGE
                                            United States District Court
                                            Southern District of Indiana

Distribution:

Tyler John Moorhead
BOSE MCKINNEY & EVANS LLP
tmoorhead@boselaw.com

Zachary D. Price
INDIANA ATTORNEY GENERAL
Zachary.Price@atg.in.gov

Robert Austin Rowlett
INDIANA ATTORNEY GENERAL
Robert.Rowlett@atg.in.gov

Justin E. Swanson
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
jswanson@boselaw.com

Paul D. Vink
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
pvink@boselaw.com